PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 98-5189

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20 2000
THOMAS K. KAHN
CLERK

D. C. Docket No. 88-06602-CV-NCR

ANGELO PERRINO,
STEPHEN PLACIDO,
EDNA SHEPARD,
ARTHUR WILSON,

Plaintiffs-Appellants,

versus

SOUTHERN BELL TELEPHONE
& TELEGRAPH CO.,

Defendant-Appellee,

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(April 20, 2000)**

Before BIRCH and MARCUS, Circuit Judges, and MILLS[*], Senior District Judge.

MARCUS, Circuit Judge.

This appeal concerns whether plaintiffs who bring a federal suit based on claims arising under the Employee Retirement Income Security Act of 1974 ("ERISA") are required to exhaust available administrative remedies when their employer fails to comply with all of ERISA's procedural requirements for establishing a reasonable claims procedure, 29 U.S.C. § 1133; 29 C.F.R. § 2560.503-1. In this case, the district court granted summary judgment to BellSouth Telecommunications, Inc. on the ERISA claims of four plaintiffs, Angelo Perrino, Stephen Placido, Edna Shepard, and Arthur Wilson, who failed to exhaust a grievance and arbitration procedure contained in the company's collective bargaining agreement. The plaintiffs had sought a termination pay allowance based on a provision of the agreement--a provision which constituted, as BellSouth concedes, an ERISA welfare benefits plan. We conclude that because the grievance and arbitration procedure afforded the plaintiffs access to an administrative scheme from which they could have received an adequate legal remedy for their ERISA claims, plaintiffs were required to exhaust this scheme

---

[*]Honorable Richard Mills, Senior U.S. District Court Judge for the Central District of Illinois, sitting by designation.

prior to filing suit in federal court. Accordingly, we affirm the judgment of the district court.

## I.

The facts of this case are straightforward. Angelo Perrino, Stephen Placido, Edna Shepard, and Arthur Wilson ("Appellants") are four former employees of BellSouth Communications Inc. ("Appellee") who became disabled during the course of their employment with BellSouth in the 1980's.[1] At the time, BellSouth maintained a Sickness and Accident Disability Benefit Plan (the "STD" plan) which provided short-term disability benefits to employees for up to one year. After a year, BellSouth would remove a disabled employee from the company payroll and the ex-employee then would become eligible for long-term, disability-related pension benefits. In this case, all of the named Appellants received both short-term and long-term, disability-related pension benefits from BellSouth.[2]

At the time of Appellants' employment, BellSouth did not maintain a formal ERISA plan. Instead, the terms and conditions of Appellants' employment were

---

[1]During the period of Appellants' employment, BellSouth was known as Southern Bell Telephone and Telegraph.

[2]At the time of summary judgment, Angelo Perrino and Edna Shepard still were receiving these long-term benefits. Stephen Placido and Arthur Wilson received these same benefits until the time of their deaths.

3

governed solely by the collective bargaining agreement ("Agreement") between

Bell South and their union, Communication Workers of America ("Union").

Article 8.07A2 of the Agreement contains a termination pay provision, the subject

of this litigation. The provision allows certain classes of employees, for example,

laid-off workers, to receive a termination pay allowance separate and apart from

the short-term and long-term disability benefits received by Appellants. The

provision reads in part:

> 8.07 Employment Termination Allowance
> A. Basis of Payment. A termination allowance shall be
> paid to a regular or temporary employee whose service is
> terminated under any of the conditions outlined below;
> moreover, service pension eligibility will not be a factor
> in determining whether an employee is eligible for a
> termination allowance, except as described in 8.06A2.
>
> . . .
>
> 2. As an inducement proposed, or agreed to, by the
> Company to an employee to resign because of inability or
> unadaptability to perform properly the duties of the job as
> distinguished from misconduct.

For purposes of this litigation, BellSouth concedes that these termination pay

provisions constitute an employee welfare benefit plan under ERISA.[3]

---

[3]BellSouth also admitted before the district court that there were no formal ERISA plan documents aside from the Agreement, for the relevant time period, and that, during this period, the company did not strictly comply with ERISA provisions codified at 29 U.S.C. § 1133 or at 29 C.F.R. § 2560.503-1. Bell South subsequently promulgated a summary plan description on August 9, 1992, which outlined all of the statutorily-required, ERISA-plan features including an ERISA claims

The Agreement also specifies a grievance and arbitration procedure for resolving any disputes as to "the true intent and meaning" of the Agreement or disputes "adversely affect[ing] the rights of any employee" such as a dispute over the eligibility of disabled ex-employees to receive termination pay allowances.[4]

procedure.

[4]Article 21.01 of the Agreement describes the grievance procedure in great detail. It reads:

21.01 Grievance Levels.

The parties agree that in the handling and adjustment of grievances by the Union the following procedures shall be followed.
A. An employee or group of employees shall have the right to present and adjust with the management any grievances as provided in Section 9(a) of the National Labor Relations Act, as amended, provided, however, that no adjustment shall be made with the employee or group of employees involved which is inconsistent with the terms of any collective bargaining agreement between the parties then in effect, and provided further that the Union has been given an opportunity to be present at such an adjustment.

B. After an employee or employees have presented a grievance to the Union for settlement and a Union representative has informed the Company that the Union represents the employee, or employees, the Company will not discuss or adjust such grievance, with said employee, or employees, unless the aggrieved employee, or employees, initiate a request that the Company discuss and adjust such grievance directly with him, or them, but in no event shall an adjustment be made unless a Union representative is afforded an opportunity to be present at such an adjustment.

C. All grievances, other than discipline related grievances and those involving the true intent and meaning of this agreement between the parties or adversely affecting the rights of other employees, shall be handled under the procedure set forth below. . . .

(emphasis added). Article 21.01 then proceeds to describe the available four-level grievance

5

Previously, BellSouth has been involved in several grievance proceedings with ex-employees who sought termination allowance pay, including two cases which proceeded to arbitration. According to the terms of the Agreement, a person has sixty days, from the last occurrence on which the grievance is based, to present a grievance for review.

On August 5, 1988, Appellants filed a class action suit against BellSouth under § 301 of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and § 502 of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. Appellants alleged that they were entitled to termination pay pursuant to the collective bargaining agreement in effect during the tenure of their employment with BellSouth and sought injunctive, declaratory, and compensatory relief. Appellants also sought a judgment that the termination pay provisions of the Agreement constituted an employee welfare benefit plan under ERISA and that they were entitled to benefits thereunder. Appellants asserted, based largely on a BellSouth memorandum from Assistant BellSouth VP Joe Walling, that disabled

procedure in intricate detail. Grievances which cannot be resolved through the provisions outlined in Article 21.01 may be arbitrated by an independent arbitrator at the request of either the Union or BellSouth. This arbitration procedure is outlined in detail in Article 23 of the Agreement.

workers, at the time of Appellants' disability-related terminations, were eligible for the termination pay allowances in addition to disability-related pension benefits.[5]

On April 14, 1989, Appellants amended their complaint to assert an additional theory of recovery, claiming that BellSouth had changed its interpretation of the termination pay provisions after Appellants had filed this suit for termination allowance benefits. Specifically, Appellants contended that BellSouth secretly tried to rescind Walling's interpretive memorandum after they had filed suit, an act which constituted a breach of BellSouth's fiduciary obligations under ERISA. Appellants then sought a permanent injunction requiring BellSouth to administer the plan in accordance with its prior interpretation of the termination pay provisions.

---

[5]Appellants argue that the December 16, 1986 memo from Walling explains that disabled workers may receive both the termination allowance and pension benefits. The memo states in part:

> This [Article 8.07A] language was clearly intended to mean that we would pay an employee termination allowance if eligible under Article 8.07A, whether or not that employee might receive a pension in addition to the termination allowance. One example of when this might occur would be in the case of an employee who is unable to return to work after exhausting 52 weeks of benefits. Such an employee if still disabled after 52 weeks would be dropped from the payroll and if pension eligible, would receive a pension in addition to termination allowance under Article 8.07A4.

On June 30, 1992, BellSouth filed a motion for summary judgment. It argued that the Agreement never has allowed disabled workers to receive termination pay allowances. Moreover, BellSouth contended that Appellants' claims were barred in federal court by their failure to exhaust available administrative remedies prior to filing suit. Specifically, BellSouth argued that Appellants had not filed grievances pursuant to the Agreement under which they were seeking termination pay. On July 9, 1998, the district court entered summary judgment in favor of BellSouth on this basis.

Prior to filing suit, only one of the Appellants, Angelo Perrino, actually requested a termination pay allowance from BellSouth. Perrino's request was made on January 29, 1988, four years after he was terminated by BellSouth, and was denied on March 7, 1988. In its letter denying Perrino the termination pay allowance, BellSouth informed Perrino that the Agreement did not authorize termination allowance payments to ex-employees with long-term disabilities, but that if he had made a timely request for a termination pay allowance, Perrino would have been able to invoke the Agreement's grievance and arbitration procedure to challenge the denial of the pay allowance.

Before the district court, Appellants claimed that because the Agreement did not adhere to all of the procedural requirements of ERISA, they need not have

8

resorted to the Agreement's administrative process for handling employment-related grievances. Appellants also argued that the grievance and arbitration procedure specified in the Agreement only applied to disputes or controversies between the Union and the Company, and that arbitration only can occur upon written request of either the Union or BellSouth. In response, BellSouth observed that the plain language of Article 21.01 of the Agreement grants an "employee" or "group of employees" the right to file "any" grievance, including grievances over the denial of termination pay allowances, with or without Union involvement, and that BellSouth has been involved in several such grievance and arbitration procedures with ex-employees over denials of termination pay allowances.

In granting BellSouth summary judgment on Appellants' claims, the district court concluded that Appellants had failed to exhaust available administrative remedies in the form of the Agreement's grievance and arbitration procedure. The district court made several pertinent factual findings in connection to its ruling. First, the district court determined that despite its technical noncompliance with ERISA regulations, "the Agreement sets forth with sufficient clarity the provisions for termination pay and the grievance procedures to be followed," and that despite this clarity, Appellants failed to file grievances for termination pay allowances. Second, the district court found that Appellants' failure to exhaust this

9

administrative scheme was not due to a lack of knowledge about the scheme or a

lack of access to the scheme.  The district court observed:

> [T]here has been no evidence that the plaintiffs did not
> have access to the agreement or that the defendant failed
> to provide a copy upon request from the plaintiffs.  When
> plaintiff Perrino made his request for termination pay, he
> cited the provisions of the Collective Bargaining
> Agreement.  Consequently, he was well aware of the
> grievance procedures in the Bargaining Agreement.

Finally, the district court determined based on record evidence that the

Agreement's grievance and arbitration procedure previously had been employed by

similarly-situated ex-employees to challenge the denial of termination pay

allowances.  The district court explained that "former employees of defendant have

availed themselves of the grievance procedure in similar circumstances as those

presented by plaintiffs," making the grievance and arbitration procedure an

available administrative remedy for Appellants' claims.

## II.

We review the district court's grant of summary judgment de novo, viewing

the evidence in the light most favorable to the party opposing the motion. See

Counts v. Amer. Gen. Life & Accident Ins. Co., 111 F.3d 105, 108 (11th Cir.

1997) (citing  Harris v. Board of Educ. of Atlanta, 105 F.3d 591, 595 (11th

10

Cir.1997)). In this case, however, it is undisputed that Appellants failed to exhaust the administrative remedy outlined in their ERISA plan. Appellants concede that they did not pursue a grievance over the denial of termination pay benefits through the grievance and arbitration procedure explained in BellSouth's collective bargaining agreement. Both parties also concede that this Agreement constituted an ERISA plan for the relevant time period. Our law is well-settled that "plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." Counts, 111 F.3d at 108; see also Springer v. Wal-Mart Associates' Group Health Plan, 908 F.2d 897, 899 (11th Cir.1990); Mason v. Continental Group, Inc., 763 F.2d 1219, 1225-27 (11th Cir.1985). However, a district court has the sound discretion "to excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate," Counts, 111 F.3d at 108, or where a claimant is denied "meaningful access" to the administrative review scheme in place, Curry v. Contract Fabricators, Inc. Profit Sharing Plan, 891 F.2d 842, 846-47 (11th Cir.1990).

In this case, the district court did not excuse the exhaustion requirement, and granted summary judgment on this basis. On appeal, Appellants challenge this decision for two principal reasons: first, they claim that exhaustion should not be required where an ERISA plan fails to comply in full with all ERISA regulations,

11

and second, they argue that the grievance and arbitration procedure contained in the ERISA plan was not available to ex-employees, making resort to this procedure futile. The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which we review only for a clear abuse of discretion. See Springer, 908 F.2d at 899; Curry, 891 F.2d at 846. After carefully reviewing the record, we conclude that the district court did not abuse its discretion in applying the exhaustion requirement to Appellants' claims.

First, our caselaw makes plain that as a general rule plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court. See Counts, 111 F.3d at 108; Springer, 908 F.2d at 899; Mason, 763 F.2d at 1225-27. This rule is grounded in several important policy rationales, and also is consistent with Congressional intent. As we explained in Mason:

> Compelling considerations exist for plaintiffs to exhaust administrative remedies prior to instituting a lawsuit. Administrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by

> pension plan trustees to assist courts if the dispute is eventually litigated. In addition, imposing an exhaustion requirement in the ERISA context appears to be consistent with the intent of Congress that pension plans provide intrafund review procedures.

Id. at 1227 (internal citation omitted). As a result, we strictly enforce an exhaustion requirement on plaintiffs bringing ERISA claims[6] in federal court with certain caveats reserved for exceptional circumstances. See Springer, 908 F.2d at 899. Thus far, our circuit has recognized exceptions only when "resort to administrative remedies would be futile or the remedy inadequate," Counts, 111 F.3d at 108, or where a claimant is denied "meaningful access" to the administrative review scheme in place, Curry, 891 F.2d at 846-47.

Appellants do not dispute this precedent. However, Appellants argue that we should recognize a new exception to our exhaustion requirement; namely, that

---

[6]We apply this exhaustion requirement to both ERISA claims arising from the substantive provisions of the statute, and ERISA claims arising from an employment and/or pension plan agreement. See Counts, 111 F.3d at 109; Springer, 908 F.2d at 899; Mason, 763 F.2d at 1225-27; see also Lindemann v. Mobil Oil Corp., 79 F.3d 647, 650 (7th Cir.1996) (finding that rationale for exhaustion applies equally to claims for benefits and claims based upon ERISA itself). However, several other circuits do not apply the exhaustion requirement to causes of action based on statutory violations. See Held v. Manufacturers Hanover Leasing Corp., 912 F.2d 1197, 1205 (10th Cir.1990); Zipf v. American Tel. & Tel. Co., 799 F.2d 889, 891-94 (3rd Cir.1986); Amaro v. Continental Can Co., 724 F.2d 747, 750-53 (9th Cir.1984). This circuit split, however, is irrelevant to this dispute since Appellants' claims are based on the termination allowance provision of a collective bargaining agreement and not on a substantive violation of ERISA.

13

an employer's noncompliance with ERISA's technical requirements (for example, creating a summary plan description, or delineating a formal claims procedure) should excuse a plaintiff's duty to exhaust administrative remedies. Under ERISA, an employer is required to furnish employees with a "Summary Plan Description" that gives details of the benefits provided by the company, and articulates the claims procedure available to present and adjudicate ERISA claims. See 29 U.S.C. § 1021-22; 29 C.F.R. § 2560.503-1. Federal regulations also mandate certain requirements for an ERISA claims procedure in order to ensure the procedure is "reasonable." According to federal regulations, "a plan established and maintained pursuant to a collective bargaining agreement," in order to comply with ERISA's requirements for a reasonable claims procedure, must "set[] forth or incorporate[] by specific reference":

> (A) Provisions concerning the filing of benefit claims and the initial disposition of benefit claims, and

> (B) A grievance and arbitration procedure to which denied claims are subject.

29 C.F.R. § 2560.503-1(b)(2)(A)-(B).

Before the district court, BellSouth conceded that the Agreement, at the time of Appellants' employment and termination, did not comply strictly with all of ERISA's regulations. For instance, the termination benefits provision never was

14

formalized by a separate summary plan description. In addition, although the Agreement contained a detailed provision explaining the terms and conditions under which employees could receive termination allowances as well as a detailed grievance and arbitration procedure available for "any" employment-related grievance, these provisions did not state explicitly that employees could file termination allowance claims or obtain independent review of these claims if they were denied by the plan administrator.

Because of these technical deficiencies, Appellants contend that the ERISA exhaustion requirement ought to be waived. They claim that because the Agreement's provisions do not explicitly aver that termination allowance claims can be filed or receive review and arbitration, the Agreement does not contain a "reasonable" claims procedure. Appellants also assert that because BellSouth did not promulgate and distribute a summary plan description, they should not be compelled to exhaust the plan's administrative remedy procedures.[7]

---

[7]In support, Appellants cite proposed federal regulations which state:

> A failure to provide the procedures mandated by the [ERISA] regulations effectively denies participants and beneficiaries access to the process mandated by the [ERISA] Act. It is the view of the Department that claimants should not be required to continue to pursue claims through an administrative process that fails to meet the minimum standards of the regulation.

Rules and Regulations for Admin. and Enforcement, Claims Procedure, 63 Fed. Reg. 48390, 48397

15

We find Appellants' arguments unpersuasive. After reviewing the relevant federal regulations and our prior precedent, we decline to create an exception to the exhaustion requirement in this case. First, we stress the exceedingly technical nature of Appellants' contention. While the Agreement is in technical noncompliance with some ERISA regulations, the Agreement does contain specific provisions which explain employee eligibility for termination allowances (the ERISA benefit at issue) as well as the process for adjudicating termination-related grievances. Moreover, the district court determined that other similarly-situated ex-employees had used the Agreement's grievance and arbitration procedure to challenge the denial of termination pay allowances, and that several of these ex-employees had obtained independent arbitration of their claims. In addition, the district court found that the only Appellant who even requested a termination allowance, Angelo Perrino, had specific knowledge of the Agreement's grievance and arbitration procedure yet never filed a grievance. The district court also concluded that there was no evidence that any of the Appellants lacked access to or knowledge about the Agreement's grievance and arbitration procedure.[8]

_____

(1998) (to be codified at 29 C.F.R. pt. 2560) (proposed Sep. 9, 1998).

[8]It is important to note that BellSouth did not maintain an ERISA benefits plan separate from the collective bargaining agreement, and is not seeking to impose a "twin" exhaustion requirement on plaintiffs requiring them to proceed through both an ERISA claims procedure and a separate grievance and arbitration procedure contained in the collective bargaining agreement. Here, the

Therefore, we conclude that, while technically deficient, the Agreement's administrative scheme was available to Appellants for the review and arbitration of their ERISA termination allowance claims, and that if the process had been invoked, Appellants could have received independent arbitration and an adequate legal remedy for their claims.

Our prior precedent makes clear that the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy. For instance, in Counts, the plaintiff argued that the district court erred in not excusing the exhaustion requirement because his employer's termination letter failed to comply precisely with ERISA's notice requirements under §29 U.S.C. 1133 and §29 C.F.R. 2560.503-1(f). See Counts, 111 F.3d at 107. The district court acknowledged that the termination letter was technically deficient in some respects, but concluded that "the letter substantially complied with the notice requirements because, taken as a whole, it supplied Counts 'with a statement of reasons that, under the circumstances of the case, [the employer's letter] permitted a sufficiently clear

termination pay provisions of the collective bargaining agreement serve as the ERISA plan. In short, plaintiffs wish to seek and receive ERISA benefits based on the termination provisions of the collective bargaining agreement while ignoring the grievance and arbitration procedure clearly explained in this same agreement for exhaustion purposes.

understanding of the administrator's position to permit effective review.'" See id. at 108.

On appeal, we affirmed the district court's application of the exhaustion requirement despite the employer's noncompliance with the ERISA notice provision. In so doing, we explained that while the "normal time limits for administrative appeal may not be enforced" against a claimant who receives an inadequate benefits termination letter, the "usual remedy" should not be "excusal from the exhaustion requirement, but remand to the plan administrator for an out-of- time administrative appeal." Id. The clear import of our decision was the conclusion, that though employees should not have their ERISA claims adversely affected by an employer's technical noncompliance with ERISA regulations, so too, they should not be able to avoid the exhaustion requirement where technical deficiencies in an ERISA claims procedure do not hinder effective administrative review of their claims. See Baxter v. C.A. Muer Corp., 941 F.2d 451, 453-54 (6th Cir. 1991) (upholding exhaustion requirement despite the employer's failure to issue a written denial of an employee's benefits where the error resulted in no

prejudice to the employee's ability to obtain administrative review of the claim denial).[9]

This approach conforms with the logic of our exhaustion doctrine in which we apply the exhaustion requirement strictly and recognize narrow exceptions only based on exceptional circumstances.  See Counts, 111 F.3d at 108; Springer, 908 F.2d at 899;  Curry, 891 F.2d at 846-47. Our exceptions to this doctrine where resort to an administrative scheme is unavailable or would be "futile," or where the remedy would be "inadequate" simply recognize that there are situations where an ERISA claim cannot be redressed effectively through an administrative scheme.  In these circumstances, requiring a plaintiff to exhaust an administrative scheme would be an empty exercise in legal formalism.  That said, it makes little sense to excuse plaintiffs from the exhaustion requirement where an employer is technically noncompliant with ERISA's procedural requirements but, as the district court determined in this case,  the plaintiffs still had a fair and reasonable opportunity to

_____

[9]Analogously, several federal circuits have denied remedial relief for technical violations of ERISA's statutory requirements absent a showing that the violations had adversely affected the plaintiffs' ERISA rights.  See Berger v. Edgewater Steel Co., 911 F.2d 911, 920-21 (3rd Cir.1990); Blau v. Del Monte Corp., 748 F.2d 1348, 1350-51 (9th Cir.1984).  In addition, we have held that procedural errors in the management of an ERISA plan did not warrant a more liberal review standard than the traditional "arbitrary and capricious" standard for the judicial review of ERISA benefit determinations.  See Anderson v. Ciba-Giegy Corp., 759 F.2d 1518, 1520 (11th Cir. 1985); see also Blau v. Del Monte Corp., 748 F.2d 1348, 1352-53 (9th Cir.1984); Dennard v. Richards Group, Inc., 681 F.2d 306, 313-14 (5th Cir.1982).

pursue a claim through an administrative scheme prior to filing suit in federal court. Cf. Curry, 891 F.2d at 846-47 (finding that "[w]hen a plan administrator in control of the available review procedures denies a claimant meaningful access to those procedures, the district court has the discretion not to require exhaustion"). Therefore, if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit.

Finally, Appellants also argue that resort to the Agreement's grievance and arbitration procedure would have been futile because they are ex-employees not owed a duty of fair representation by the Union. They contend that under the arbitration provision of the Agreement, arbitration is available only after either the Union or BellSouth requests it in connection to an employment-related grievance, and that the Union is not obligated legally to pursue arbitration for them.[10]

---

[10]The arbitration provision states in relevant part:

> 23.01(B) If at any time a controversy should arise between the Union and the Company regarding the true intent and meaning of any provisions of this or any other agreement between the parties or a controversy as to the performance of an obligation hereunder, which the parties are unable to compose by full and complete use of the grievance procedure set up by Article 21, the matter shall be arbitrated upon written request of either party to this Agreement to the other.

The provision goes on to explain that an "impartial arbitrator" will be chosen upon agreement of the parties, and that if no agreement is reached, either side may apply to the Federal Mediation and

Appellants therefore claim that they lack access to arbitration of their ERISA claims under the Agreement's administrative scheme.

Based on the undisputed facts of this case, we find this argument to be without merit. This case might be different if Appellants actually had resorted to the grievance and arbitration procedure only to be told by the Union that it would not seek arbitration for their benefits claims. However, none of the Appellants even pursued the grievance and arbitration procedure available, at least, in theory. In addition, the district court specifically found, based on the uncontroverted affidavit of Ray Giesler, BellSouth's Operations Manager of Labor Relations, and the record of several prior arbitrations, that the Union filed a substantial number of grievances on the behalf of terminated employees, and that BellSouth retirees enjoyed the same rights as active employees with respect to filing a termination-related grievance. The district court also noted that at least two retirees previously had arbitrated with BellSouth over the termination pay allowance. We therefore conclude that the futility objections raised by Appellants in terms of access to the arbitration proceeding are merely theoretical, if present at all, and therefore do not justify Appellants' excusal from the exhaustion requirement.

III.

Conciliation Service for an appointed arbitrator.

In short, we find that Appellants were not denied access to an administrative scheme from which they could have received an adequate legal remedy for their ERISA claims. As such, we conclude that Appellants were compelled to first exhaust the available administrative remedies contained in the collective bargaining agreement prior to filing suit in federal court. We therefore AFFIRM in full the district court's order granting summary judgment to BellSouth on Appellants' ERISA claims.

AFFIRMED.