Kathleen **TINDELL**, Plaintiff,

v.

**TREE OF LIFE, INC.**, a Florida corporation, and **Aetna Life Insurance Company**, a nonresident insurance company, Defendants.

Case No. 3:08–cv–668–J–34HTS.

United States District Court, M.D. Florida, Jacksonville Division.

Nov. 24, 2009.

Danielle L. Rosen, Kirk W.B. Wagar, Wagar Law PA, Coconut Grove, FL, for Plaintiff.

Jerel C. Dawson, William J. Gallwey, III, Shutts & Bowen, LLP, Miami, FL, for Defendants.

## ORDER

MARCIA MORALES HOWARD, District Judge.

**THIS CAUSE** is before the Court on Defendant, Aetna Life Insurance Company's, Dispositive Motion for Summary Judgment with Statement of Undisputed Material Facts and Memorandum of Law in Support Thereof (Doc. No. 34; Aetna's Motion), filed July 14, 2009, and Defendant Tree of Life's Renewed Dispositive Motion for Summary Judgment with Accompanying Statement of Undisputed Material Facts and Memorandum of Law (Doc. No. 35; Tree of Life's Motion), filed July 14, 2009. Plaintiff, Kathleen Tindell (Tindell), opposes Aetna's Motion. *See* Plaintiff's Response in Opposition to Defendant Aetna Life Insurance Company's Dispositive Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. No. 42; Response), filed September 1, 2009. With leave of Court, Aetna Life Insurance Company (Aetna) filed a reply to Tindell's Response. *See* Defendant Aetna's Court–Authorized Reply Memorandum of Law in Support of Its Motion for Summary Judgment (Doc. No. 47; Reply), filed October 9, 2009. Tindell does not contest Tree of Life's Motion. *See* Plaintiff's Notice of No Opposition to Defendant, Tree of Life, Inc.'s Motions for Summary Judgment (Doc. No. 48), filed October 15, 2009. Accordingly, the motions are ripe for review.

## I. Background [1]

Kathleen Tindell was employed by Defendant Tree of Life, Inc. (Tree of Life) as

---

1. As discussed below, because this case is before the Court on Defendants' Motions for Summary Judgment, the facts recited herein and all reasonable inferences therefrom have been viewed in a light most favorable to Plaintiff.

an inspector. *See* Aetna's Motion ¶ 1; Response ¶ 1. On July 1, 2004, Tindell suffered an injury to her neck and back while at work. *See* Administrative Record (Doc. No. 36; Admin. Rec.) at A65. As a result, she stopped working on July 11, 2004. *See* Response ¶ 8. Although she returned to work for one day, on September 14, 2004, she again suffered an injury, *see* Admin. Rec. at A65, and thereafter, did not return to work, *see* Response ¶ 8. Tindell's injuries included damage to her knee, shoulder, and neck resulting in an inability to flex her knees, walk, squat down, raise her left arm, or lift any object. *See* Admin. Rec. at A54.

As a Tree of Life employee, Tindell was a participant in an employee welfare benefit plan established and maintained by her employer Tree of Life (the Plan), and governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. *See* Aetna's Motion ¶ 1; Response ¶ 1. Through the Plan, Tindell had both short term (STD) and long term disability (LTD) coverage under a group insurance policy issued to Tree of Life by Aetna (the Policy).[2] *See* Aetna's Motion ¶ 1; Response ¶ 1. Under the terms of the Policy,[3] a claimant can receive a monthly LTD benefit for a period of "non-occupational disability caused by a disease or injury." *See* Amended Complaint for Declaratory Relief (Doc. No. 7; Amended Complaint), Ex. A[4] at 9. This LTD benefit is payable after a 180 day "elimination period," defined as, "a length of time during a period of disability that must pass before benefits start." *Id.* at 5, 9. Pursuant to the Policy, a participant is considered disabled, and therefore eligible for benefits, for the first 24 months after expiration of the elimination period, if the participant is "not able to perform the material duties of [her] *own occupation* solely because of: disease or injury; and [her] work earnings are 80% or less of [her] adjusted predisability earnings." *Id.* at 9 (additional emphasis omitted). After the first 24 months, a claimant must meet a more stringent definition of disability in order to remain eligible for benefits. *Id.* Specifically, to continue to be considered disabled the claimant must be "not able to work at any *reasonable occupation* solely because of: disease, injury;" or, if able to work, the claimant's earnings must be 80% or less of her adjusted predisability earnings. *Id.* (additional emphasis omitted).

After a claimant files a claim for benefits, the Policy states that she "will be notified of an adverse benefit determination not later than 45 days after receipt of the claim." *Id.* at 30. The Policy allows for two extensions of up to 30 days each in the event of "circumstances outside the Plan's control." *Id.* In addition, the Policy provides for an appeals process for the review of an adverse claims decision. *Id.* at 31. Under the terms of the Policy, a claimant has 180 days after receipt of an adverse benefit decision to appeal the deci-

---

2. Under the terms of the Plan, Tree of Life is the "Plan Administrator." *See* Amended Complaint, Ex. A at 29. However, Aetna, not Tree of Life, is responsible for rendering benefits determinations and making benefit payments pursuant to the LTD Policy. *See* Order (Doc. No. 19) at 6; *see also* Response ¶ 2; Aetna's Motion ¶ 2. As such, for purposes of this analysis, the term "Plan Administrator" will refer to Aetna.

3. An underlying insurance policy is considered a plan document for purposes of ERISA.

*See Ruiz v. Continental Cas. Co.,* 400 F.3d 986, 990–91 (7th Cir.2005); *see generally Shaw v. Conn. Gen. Life Ins. Co.,* 353 F.3d 1276, 1282–83 (11th Cir.2003) (treating an underlying insurance policy as a plan document).

4. Exhibit A is attached to the original Complaint for Declaratory Relief (Doc. No. 1; Complaint), however Tindell incorporated the Exhibit by reference in her Amended Complaint. *See* Amended Complaint ¶ 8.

sion. *Id.* The Policy states that a claimant "will ordinarily be notified of the decision not later than 45 days after the appeal is received," with an allowance for an additional 45 days "if special circumstances require an extension of time." *Id.*

Following her July 2004 injury, Tindell submitted a claim for STD benefits. *See* Response at 5. On September 14, 2005, Aetna denied Tindell's request for STD benefits on the basis that "the plan does not pay weekly benefits for disability caused by a disease or injury that is work-related. [Tindell's] disability has been determined to be work-related." Admin. Rec. at A61. Aetna's denial letter informed Tindell of her right to an administrative appeal, and her right under ERISA to bring a civil action if she disagreed with the final determination on review. *Id.* Thereafter, Tindell pursued an administrative appeal of this denial, arguing that although her back injury was work-related, her other injuries were not. *Id.* at A60. On October 26, 2005, Aetna denied Tindell's appeal finding, once again, that her injuries were work-related. *Id.* at A94. The denial letter again informed Tindell of her right to bring an ERISA action. *Id.* at A96.

On November 3, 2005, rather than file suit to challenge Aetna's determination, Tindell submitted a request to Aetna asking that it review the denial of her STD benefits, and on the following day, she submitted her first claim for LTD benefits. *Id.* at A88, A90. Aetna responded to the first request on November 15, 2005, advising Tindell that she had exhausted her appeal rights concerning her STD benefits, and therefore, an additional review would not be conducted. *Id.* at A100. On December 12, 2005, Aetna acknowledged receipt of the claim for LTD benefits and requested additional information in order to process the claim. *Id.* at A102. Tindell informed Aetna in a letter dated January 3,

2006, that she would not be submitting any more information and requested that Aetna process her claim based on the previously submitted information. *Id.* at A104. Although Aetna initially approved Tindell's LTD claim on February 15, 2006, finding that she was "totally disabled from [her] *own occupation,*" *id.* at A132 (emphasis added), on March 3, 2006, it nevertheless denied her request for LTD benefits because Aetna considered her injuries to be the result of a work-related incident. *Id.* at A144–46. As part of the denial, Aetna again informed Tindell of her right to administratively appeal this decision, and to file a civil action under ERISA if she disagreed with the determination on appeal. *Id.* at A146–47.

On June 12, 2006, Tindell submitted an administrative appeal by letter in which she requested a review of the denials of her claims for both STD and LTD benefits. *Id.* at A152–54. On August 3, 2006, Aetna once again denied Tindell's request for STD and LTD benefits on the grounds that her injuries were work-related. *Id.* at A169–72. The denial letter again informed Tindell of her right to file a civil action under ERISA if she still disagreed with the determination. *Id.* at A171–72. However, Tindell did not file an action at that time. Instead, five months later, on January 9, 2007, Tindell sent a letter to Aetna stating that she had "additional medical documentation" and requesting that Aetna review that information. *Id.* at A173. Aetna treated this letter as a request for an appeal and agreed to reconsider Tindell's claims. *Id.* at A176. However, Tindell did not provide Aetna with the additional medical documentation for review until April 17, 2007. *See id.* at A184. While it waited for Tindell to submit this information, Aetna tolled the time for reviewing the appeal. *See id.* at A180, A178, A181, A183. In a letter dated April 30, 2007, Aetna acknowledged that it had received word from Tindell that no more information would be

forthcoming and as such was forwarding her file for the "commencement of the clinical review." *Id.* at A225. On May 30, 2007, Aetna sent a letter to Tindell stating: "[i]t is our determination that the additional information received supports Ms. Tindell's eligibility for disability benefits under the above policy. Her claim has been returned to the Disability Analyst for further file development." *Id.* at A227. Thereafter, on July 11, 2007, Tindell's claim for STD benefits was approved. *See* Response ¶ 22; Aetna's Motion ¶ 22.

In September 2007, Aetna performed a vocational analysis to assist in its determination of Tindell's eligibility for LTD benefits. *See* Aetna's Motion ¶ 23; Response ¶ 23. Following the results of the vocational analysis, Aetna sent two letters to Tindell dated September 25, 2007. Admin. Rec. at A241–47. The first letter informed Tindell that she was eligible to receive monthly benefits for the 24 month "own occupation" period of disability. *Id.* at A241. As such, she was informed that she would receive a benefit payment encompassing the period from January 8, 2005, through January 7, 2007. *Id.* at A43. The second letter informed Tindell that her LTD benefits were terminated, effective January 8, 2007, because she failed to meet the "any reasonable occupation" definition of disability. *Id.* at A244–46. The letter also informed Tindell that she could seek an administrative appeal of the determination, and if she disagreed with the final determination on review, she could then file a civil action under ERISA. *Id.* at A246–47. Instead of seeking administrative review, however, Tindell filed the instant lawsuit on July 1, 2008, alleging that Aetna underpaid her for the "own occupation" LTD benefits, and that Aetna wrongfully denied her the "any reasonable occu-

pation" LTD benefits. *See* Amended Complaint ¶ 26. In addition, Tindell seeks employment-related "other benefits" from Tree of Life which are payable under the Plan while an employee receives LTD benefits.[5] *See id.* ¶¶ 22, 27.

## II. Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c) (Rule(s)), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant. *See Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir.1996) (quoting *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir.1993)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir.1995).

---

5. These "other benefits" include medical insurance, dental insurance, vision insurance, associate life insurance, dependent life insur-ance, accidental death and dismemberment insurance, and retirement savings or pension plan. *See* Amended Complaint ¶ 22.

## III. Aetna's Motion

### A. Summary of the Arguments

In Aetna's Motion, Aetna seeks summary judgment based upon its contention that Tindell failed to exhaust her administrative remedies. *See* Aetna's Motion at 11–15. Specifically, Aetna argues that a plaintiff is required to exhaust "all available administrative remedies" prior to bringing suit in district court. *Id.* at 12. Because Tindell failed to file an administrative appeal challenging Aetna's calculation of her "own occupation" LTD benefits and Aetna's denial of the "any reasonable occupation" LTD benefits, she has failed to exhaust her administrative remedies. *Id.* at 13–14. Additionally, Aetna maintains that Tindell's previous appeals regarding her LTD benefits are not applicable here because those appeals only dealt with Aetna's denial of Tindell's "own occupation" benefits whereas the "any reasonable occupation" benefits at issue here are "separate and distinct." *Id.* at 14. Last, Aetna argues that Tindell's failure to exhaust her remedies should not be excused because an administrative appeal would not have been futile nor would the remedy have been inadequate. *Id.* at 14–15.

In the event the Court determines that Tindell's claim should be considered on the merits, Aetna alternatively maintains that the Court should find that the decision was not wrong. *Id.* at 15–23. Aetna argues that it was entitled to rely on the opinion of a qualified medical consultant, who neither treated nor examined Tindell, but did review her medical records. *Id.* at 20. Aetna further contends that it was not wrong in relying on the vocational analysis which demonstrated the existence of available occupations suitable for Tindell. *Id.* at 22. Lastly, Aetna argues that the fact that Tindell was awarded Social Security Disability benefits does not mean that she

is entitled to LTD benefits under the Policy because of the differences between the definition of disability under the Social Security program and the LTD benefit Policy. *Id.* at 23. Regardless, Aetna contends that even if the Court disagrees with Aetna's decision, the decision was not arbitrary and capricious, and therefore should not be overturned. *See* Aetna's Motion at 11, 23.

In response to Aetna's Motion, Tindell argues that her administrative remedies should be "deemed exhausted" due to Aetna's "undue delay" in the handling of her claims. Response at 11. In support of her contention, Tindell cites a number of instances throughout the processing of her claims and appeals that she considers to be blatant violations of the applicable regulation, 29 C.F.R. § 2560.503–1. *Id.* at 11–13. Further, Tindell asserts that these delays not only render her administrative remedies exhausted, but also entitle her to *de novo* review of Aetna's decision.

With respect to her request for *de novo* review. Tindell argues that Aetna's decision violated the "full and fair review" requirement under ERISA. *Id.* at 15. Tindell's principal quarrel with Aetna's review of her claim is her belief that the recommendation of the reviewing physician, Dr. Cowl, was contrary to the findings of her treating physicians. As such, Tindell argues that Aetna and Dr. Cowl disregarded the "supportive medical documentations" without due explanation and failed to "properly and honestly investigate this claim." *Id.* at 15–19. Tindell submits this as evidence that Aetna's denial of her claim for "any reasonable occupation" LTD benefits was not only wrong, but also arbitrary and capricious. *See* Response at 19.

### B. Discussion

 It is well-settled in this Circuit that before a plaintiff may bring an

ERISA action in federal court, she must exhaust the administrative remedies provided for in the ERISA plan for challenging the administrator's denial of benefits. *See, e.g., Watts v. BellSouth Telecomms., Inc.,* 316 F.3d 1203, 1204, 1206 (11th Cir. 2003); *Perrino v. So. Bell Tel. & Tel. Co.,* 209 F.3d 1309, 1315 (11th Cir.2000). Although not required by the text of ERISA, exhaustion is a court-imposed requirement[6] based on the interpretation of the statute and congressional intent. *See Watts,* 316 F.3d at 1207; *Mason v. Cont'l Group, Inc.,* 763 F.2d 1219, 1227 (11th Cir.1985). The reasons underlying the recognition of an exhaustion requirement have been articulated as follows:

> [a]dministrative claim-resolution procedures reduce the number of frivolous lawsuits under ERISA, minimize the cost of dispute resolution, enhance the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated.

*Perrino,* 209 F.3d at 1315 (quoting *Mason,* 763 F.2d at 1227). Generally, if an individual fails to exhaust the administrative remedies, that person's claim is barred. *See Watts,* 316 F.3d at 1206; *see also Springer v. Wal–Mart Assocs. Group Health Plan,* 908 F.2d 897, 900 (11th Cir.1990) (recognizing "that the right to seek federal court review matures only after that requirement has been appropriately satisfied or otherwise excused"). Although the courts strictly enforce the exhaustion requirement, the Eleventh Circuit Court of Appeals has recognized certain exceptions. *Perrino,* 209 F.3d at 1315–16. Exhaustion is excused when " 'resort to administrative remedies would be futile or the remedy inadequate,' or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Perrino,* 209 F.3d at 1316 (citation omitted) (quoting *Counts v. Amer. Gen. Life & Accident Ins. Co.,* 111 F.3d 105, 108 (11th Cir.1997) and *Curry v. Contract Fabricators, Inc. Profit Sharing Plan,* 891 F.2d 842, 846–47 (11th Cir.1990)).

Additionally, the failure of an administrator to complete the final disposition of a claim in a timely manner results in a "deemed exhaustion" of the claimant's administrative remedies, tantamount to the "deemed denial" formerly set forth in the ERISA regulations. *See Torres v. Pittston Co.,* 346 F.3d 1324, 1332 (11th Cir. 2003);[7] 29 C.F.R. § 2560.503–1(*l*); *see*

---

6. "The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision." *Perrino,* 209 F.3d at 1315.

7. In *Torres,* the Eleventh Circuit noted that the ERISA regulations were amended, effective January 20, 2001, to omit the specific "deemed denial" language. *Torres,* 346 F.3d at 1332 n. 10. The 1998 version of 29 C.F.R. § 2560.503–1(h)(4) provides as follows:

> The decision on review shall be furnished to the claimant within the appropriate time described in paragraph (h)(1) of this section. If the decision on review is not fur-

nished within such time, the claim shall be *deemed* denied on review.

29 C.F.R. § 2560.503–1(h)(4) (1998) (emphasis added). However, the *Torres* court characterized the change in the language of the regulations as a mere modification, and not actually a removal, of the "deemed denial" provision, acknowledging that "[a]mong other changes, the regulation now gives the plan administrator only 45 days to act on a claim, rather than the 90 days applicable to pre–2002 claims." *Torres,* 346 F.3d at 1332 n. 10; *see also Coates,* 2008 WL 269133, at *2 ("Although the specific 'deemed denied' language in the regulation has been removed, the Eleventh Circuit in *Torres* referred to the change

*also Coates v. Guardian Life Ins. Co.,* No. 8:07–cv–291–T–26TBM, 2008 WL 269133, at *2 & n. 6 (M.D.Fla. Jan. 30, 2008) ("The applicable regulations clearly permit the claimant to pursue his remedies of filing suit if the plan administrator has neglected to timely deny the claim, characterizing the situation as a 'deemed' exhaustion of administrative remedies."); *Stefansson v. Equitable Life Assurance Soc'y of U.S.,* No. 5:04–cv–40–DF, 2005 WL 2277486, at *9 (M.D.Ga. Sept. 19, 2005) (noting the continued vitality of the principle of "deemed denial"); *Seger v. ReliaStar Life,* No. 3:04–cv–16–RV–MD, 2005 WL 2249905, at *7 (N.D.Fla. Sept. 14, 2005) ("It has been clearly established that once the ERISA regulatory deadline expires, a claimant may bring a civil action to determine the merits of her claim.") (quoting *Mass. Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). The "deemed exhausted" provision is set forth in the Department of Labor's regulations as follows:

> [i]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be *deemed to have exhausted the administrative remedies available* under the plan and *shall be entitled to pursue any available remedies* under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

*See* 29 C.F.R. § 2560.503–1(*l* ) (2000) (emphasis added).

██ In the instant action, Tindell asserts that her administrative remedies are "deemed exhausted" because of the "undue delays" on the part of Aetna in processing her claims. Response at 14–15. The Policy sets out the relevant time limits in language mirroring the governing ERISA

regulation. *See* 29 C.F.R. § 2560.503–1(f)(3); (i)(3)(i). The initial determination of a claim for disability benefits must be made no later than 45 days after receipt of the claim. 29 C.F.R. § 2560.503–1(f)(3). The Policy allows for two 30 day extensions of time if the Plan Administrator determines that such extensions are necessary due to matters beyond the control of the Plan and the Administrator properly notifies the claimant. *Id.* With regard to administrative appeals, the Plan Administrator must notify a claimant of the benefit determination on review no later than 45 days after receipt of the claimant's request for review, with one 45 day extension permitted if necessary, and if proper notice is given to the claimant. 29 C.F.R. § 2560.503–1(i)(3)(i). The applicable ERISA regulation also permits the tolling of the time limit when an extension is needed due to the failure of the claimant to submit information necessary to decide a claim. 29 C.F.R. § 2560.503–1(i)(4) ("[T]he period for making the benefit determination on review shall be tolled from the date on which the notification of the extension is sent to the claimant until the date on which the claimant responds to the request for additional information."). However, the claimant's response ends the tolling period whether the response includes the requested additional information or not. *See McDowell v. Standard Ins. Co.,* 555 F.Supp.2d 1361, 1369 n. 9 (N.D.Ga.2008).

Before addressing the merits of Aetna's exhaustion defense, the Court must identify which of Aetna's decisions are at issue in the instant litigation. Tindell cites a number of instances throughout the processing of her claims and appeals which she contends are evidence of Aetna's "undue delay." Response at 11–13. However, in this lawsuit Tindell challenges only

in the language as simply a modification of

the 'deemed denied' provision.")

Aetna's most recent decisions determining the amount and duration of her LTD benefits. Tindell's prior administrative appeals all concerned the question of whether Tindell's injuries were work-related and therefore not covered under the Policy. *See* Admin. Rec. at A144–47, A152–54, A169–72, A173. Ultimately, Tindell prevailed on that issue. Indeed, her appeal of those determinations resulted in Aetna's reversal of its prior decisions and a finding that Tindell was eligible for STD and LTD benefits. Admin. Rec. at A227. As such, in this action Tindell is not challenging the decision made by Aetna after review of her final appeal.

After Tindell's successful appeal on the issue of whether her injuries were covered under the Policy, her claims for STD and LTD benefits were sent back to the Disability Analyst for processing. Aetna determined that Tindell was eligible for STD benefits as well as LTD benefits for the 24 month "own occupation" period. *See* Response ¶¶ 22, 25; Aetna's Motion ¶¶ 22, 25. However, Aetna concluded that Tindell was not eligible to continue receiving benefits after January 7, 2007 because she did not meet the "any reasonable occupation" definition of disability. Admin. Rec. at A244–47. In this action, Tindell challenges Aetna's calculation of the amount of her "own occupation" disability benefits, and the determination that her benefits must be terminated after 24 months because she does not meet the "any reasonable occupation" definition of disability. *See* Amended Complaint ¶¶ 20, 26. Although Aetna informed Tindell of her right to appeal these determinations and the applicable procedures, it is undisputed that Tindell did not pursue an administrative appeal of these determinations. *See* Aetna's Motion ¶ 27; Response ¶ 27. While Tindell had submitted prior appeals on the issue of whether her injuries were covered under the Policy, those appeals do not satisfy the exhaustion requirement as to the claims raised in this

action. *See Oliver v. Coca Cola Co.,* 497 F.3d 1181, 1199–1200 (11th Cir.2007) ("[The plan administrator has not] considered [the claimant's] claim under the 'any occupation' standard, which applies to claims for LTD benefits after the first 24 months following the onset of the disability. Accordingly, . . . [the claimant] did not exhaust his administrative remedies with respect to his claim for LTD benefits under the 'any occupation' definition."), *vacated in part,* 506 F.3d 1316 (11th Cir. 2007), *aff'd on reh'g in part,* 546 F.3d 1353 (11th Cir.2008). Nevertheless, Tindell argues that her administrative remedies as to the current claims should be "deemed exhausted." Thus, the Court must consider whether there were delays in the processing of these specific claims, after Tindell's successful appeal, that would result in the "deemed exhaustion" of her administrative remedies such that she may proceed directly to federal court without first administratively appealing these decisions.

In a letter dated May 30, 2007, Aetna informed Tindell that it had returned her claim to the Disability Analyst for processing. Admin. Rec. at A227. Tindell did not receive the Disability Analyst's determination until the September 25, 2007 letters arrived. Admin. Rec. at A241–47. This is a time span of 118 days. The applicable statutes and regulations do not specifically address the time limits for processing a claim for benefits after an initial denial has been over-turned on an administrative appeal, nor does the Policy contain any specific provisions governing the time limits and procedures applicable after an appeal. However, whether the applicable time limits are those set forth for determining appeals (45 days, and with an extension, at most 90 days) or those set forth for the processing of a claim for benefits (45 days, and with two extensions, at most 105 days), Aetna failed to comply with these

deadlines.[8] It issued the decision 118 days after May 30, 2007, the day it notified Tindell it had returned the claim to the Disability Analyst for processing. *See* Admin. Rec. at A241, A244.

Under these facts, the question before the Court is whether a plaintiff's administrative remedies should be "deemed exhausted" where a plan administrator fails to strictly comply with the regulatory deadlines in rendering a claim decision, but nevertheless provides the claimant with an administrative decision before the claimant files suit. The Eleventh Circuit Court of Appeals has instructed, "[o]ur prior precedent makes clear that the exhaustion requirement for ERISA claims should not be excused for technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy." *Perrino,* 209 F.3d at 1317. However, subsequent to the *Perrino* decision, 29 C.F.R. § 2560.503–1(*l*) was amended to provide that where a plan fails to follow claim procedures consistent with the requirements of ERISA, a claimant

> shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

29 C.F.R. § 2560.503–1(*l*). In light of this amendment, the district court in *Linder v. BYK–Chemie USA Inc.,* distinguished *Per-*

*rino.* 313 F.Supp.2d 88, 94 (D.Conn.2004); *see supra* text accompanying note 6 (explaining the regulatory amendment). The *Linder* court found that the "deemed exhausted" version of the statute, effective for claims after January 2002, "explicitly gives the claimant the right to bring suit to pursue legal remedies if the administrator fails to respond within the requisite time period." *Id.* at 93–94. The court concluded that unlike *Perrino,* "the issue is not whether the failure to exhaust administrative remedies should be excused by the Court as an equitable measure;" where a plan administrator has failed to make a decision on a claim for benefits within the applicable time limits, "29 C.F.R. 2560.503–1(*l*) has deemed administrative remedies exhausted." *Id.* at 94.

The Second Circuit Court of Appeals reached a similar conclusion in *Nichols v. Prudential Ins. Co. of Amer.,* 406 F.3d 98 (2d Cir.2005). There, the court addressed the issue of whether substantial compliance with the ERISA deadlines could avoid the "deemed exhaustion" of a claimant's administrative remedies. The court drew a distinction between the substantial compliance doctrine applied to technical violations of ERISA for purposes of determining the standard of review, as in *Perrino,* and the application of a substantial compliance doctrine to violations of the time limit regulations for purposes of denying a claimant the right to proceed to federal court. *Id.* at 107. The *Nichols* court found that "failure to adhere literally to the regulatory deadlines renders the claimant's administrative remedies ex-

---

**8.** For example, the court in *Soltysiak v. UNUM Provident Corp.,* 531 F.Supp.2d 816, 818 (W.D.Mich.2008) applied the time lines set forth for determining appeals. There, the claimant filed his initial claim and was denied. *Id.* He then filed an administrative appeal and was also denied. *Id.* The claimant then filed a civil action and the court reversed the previous denials and ordered UNUM to conduct a full and fair review of the claimant's disability claim. *Id.* When UNUM failed to make a determination after eight months, the claimant again filed suit. The court cited the time limits found at 29 C.F.R. § 2560.503–1(i)(1)(i) ("Timing of notification of benefit determination on review") in determining that UNUM had failed to timely decide the claim. *Id.*

hausted by operation of law and consequently permits the claimant to seek review in the federal courts without further delay." *Id.* at 106. The court reasoned that "adopting the proposition that substantial compliance can delay accrual of the right to sue would permit plan administrators to indefinitely tie up claimants, who are often in immediate need of benefits, with ongoing requests for information." *Id.* at 107.

While the *Nichols* and *Linder* decisions are helpful, neither resolves the question before the Court. In both *Nichols* and *Linder,* a plan claimant filed suit in federal court seeking benefits after the regulatory deadlines had expired and without having received a decision from the plan administrator. *Nichols,* 406 F.3d at 102; *Linder,* 313 F.Supp.2d at 92. Despite their failure to provide the claimant with a decision which could then be appealed, each plan administrator argued that the claimant should not be permitted to proceed with the federal civil lawsuit because the claimant had failed to exhaust the requisite administrative remedies. *See Nichols,* 406 F.3d at 102; *Linder,* 313 F.Supp.2d at 92. The courts found that in light of 29 C.F.R. 2560.503–1(*l*), substantial compliance, that is, the fact that the administrators were still diligently working to process the claim or appeal, was not a sufficient reason to require the claimant to continue to wait for the administrator's decision and thereby further delay the claimant's access to the federal courts and a resolution of his claim. *Nichols,* 406 F.3d at 107; *Linder,* 313 F.Supp.2d at 94.

Unlike, *Nichols* and *Linder,* the present case is not one in which the plan administrator has failed to render a decision on the merits of the claim yet seeks to bar the plaintiff's access to federal court by asserting that it is diligently processing the claim. It is undisputed that Aetna decided Tindell's claim. Indeed, Tindell is specifically contesting Aetna's decision regarding the calculation of her "own occupation" LTD benefits and her ineligibility for the "any reasonable occupation" LTD benefits. Nor is this a case where the claimant has suffered from a delay in the accrual of her right to sue. The facts show that instead of filing suit at the end of her first appeal in August, Tindell waited over five months and then opted not to file suit in federal court but rather to seek Aetna's reconsideration. *See* Admin. Rec. at A169, A A173. After the denial was over-turned in May, Tindell received a new benefit determination in September. *See* Admin. Rec. at A244. At that point, she could have appealed the determination, but instead opted to wait an additional nine months before filing this lawsuit in July. *See* Complaint, filed July 1,2008. An administrative appeal easily could have been submitted and decided (or at worst "deemed exhausted") well within that nine month period. *See* 29 C.F.R. § 2560.503–1(i)(3)(i) (allowing, at most, 90 days for determining an appeal).

The Court finds the case of *Oglesby v. U.S. Dep't of the Army,* 920 F.2d 57 (D.C.Cir.1990), to be both analogous and persuasive. The *Oglesby* court was faced with a similar statutory provision in the Freedom of Information Act (FOIA), 5 U.S.C. § 552(a)(6)(C), which deemed a requester's administrative remedies exhausted if the agency did not respond within the statutory deadlines. *Id.* at 62. In *Oglesby,* the plaintiff had previously submitted FOIA requests to six government agencies. *Id.* at 65. However, upon expiration of the statutory deadline, he had received a determination from only one agency. *Id.* at 65. Instead of filing a lawsuit to enforce his right with respect to the remaining requests, the plaintiff opted to wait for the agencies to respond, and ultimately received determinations from those agencies as well. *Id.* After receipt of the responses, the plaintiff did not administra-

tively appealed any of the determinations, and instead, months later, filed a lawsuit in federal court to challenge the agencies' determinations. *Id.* at 61, 65. In doing so, he argued that, pursuant to FOIA, his administrative remedies should be deemed exhausted because the agencies failed to make their determinations within the statutory deadline. *Id.* at 61. Upon consideration of those facts, the *Oglesby* court found that the statutory exhaustion provision:

> [permitted] a requester to file a lawsuit when [the statutory deadline expired] without a reply from the agency ... but that this option lasts only up to the point that an agency actually responds. Once the agency has responded to the request, the petitioner may no longer exercise his option to go to court immediately. Rather, the requester can seek judicial review only after he has unsuccessfully appealed to the head of the agency as to any denial and thereby exhausted his administrative remedies.

*Id.* at 61. The court reasoned that enforcing the statutory deadline by "allowing requesters unhappy with the first level response to their request to go to court months or even years after the agency has responded would amount to little more than a continuing penalty on the agency for its initial delay." *Id.* at 65. Additionally, the court noted that a requester who waits for the agency's tardy initial response and then brings suit without an administrative appeal "has by his actions indicated that time cannot be of the essence." *Id.*

This Court similarly views the exhaustion provision at issue here. As in *Oglesby,* if a plan administrator fails to issue a timely decision on a claim for benefits or an appeal, the claimant may deem her administrative remedies exhausted and immediately proceed to court. *See Linder,* 313 F.Supp.2d at 94 ("[T]he regulation is unequivocal that any failure to

adhere to a proper claims procedure is sufficient to deem administrative remedies exhausted."). However, if the claimant waits for the plan administrator to issue a determination, then the claimant should pursue the administrative route to its end. Requiring such a claimant to proceed with an administrative appeal allows the exhaustion requirement to accomplish its purposes. Indeed, the Court will not be required to "take over [the plan administrator's] decisionmaking role in midstream" or "interrupt [the plan administrator's] appeal process when the [plan administrator] has already invested time, resources, and expertise into the effort of responding." *Oglesby,* 920 F.2d at 64. Moreover, unlike the circumstances in *Linder* and *Nichols,* requiring such a claimant to complete an appeal before proceeding to federal court does not impose an indefinite delay or otherwise permit a plan administrator to delay accrual of the right to sue.

This interpretation is consistent with the purpose of the regulatory "deemed exhausted" provision. "The 'deemed exhausted' provision was plainly designed to give claimants faced with inadequate claims procedures a fast track into court...." *Eastman Kodak Co. v. STWB, Inc.,* 452 F.3d 215, 221 (2d Cir.2006). Stated another way, "the purpose of a 'deemed denial' is to prevent plan beneficiaries from suffering from delays in the adjudication of their claims and to allow them to demand a decision on the record as it stands (or else file suit in federal court)...." *Tomassi v. Prudential Ins. Co. of Amer.,* No. 06 C 5564, 2007 WL 1772117, at *5 (N.D. Ill. June 19, 2007) (citing *Gilbertson v. Allied Signal,* 328 F.3d 625, 636 (10th Cir.2003)). For these reasons, the *Nichols* and *Linder* courts rejected the idea that "substantial compliance [with the regulatory deadlines] can

block or delay a plaintiff's access to the federal courts." *Nichols,* 406 F.3d at 107. However, requiring a claimant to pursue the administrative process after she has elected to wait for a plan administrator's late decision does not result in the undue delay of a claimant's ability to adjudicate her claims in federal court. Instead, excusing exhaustion in such a circumstance would permit a claimant who opted to wait indefinitely for a decision to then effectively circumvent the administrative appeal process altogether.

Although in *Perrino,* the Eleventh Circuit Court of Appeals was not considering the regulatory provision at issue here, the Court finds the opinion nevertheless provides guidance in this case. *Perrino* instructs that "though employees should not have their ERISA claims adversely affected by an employer's technical noncompliance with ERISA regulations, so too, they should not be able to avoid the exhaustion requirement where technical deficiencies in an ERISA claims procedure do not hinder effective administrative review of their claims." *Perrino,* 209 F.3d at 1318. Here, Tindell's LTD claims were not adversely affected by the plan administrator's noncompliance in that she could have deemed her administrative remedies exhausted and filed suit as soon as the deadlines expired. However, she can not now avoid the exhaustion requirement by citing technical deficiencies in the ERISA claims procedure that did not hinder her pursuit of an effective administrative review of her claims.

The plain language of 29 C.F.R. § 2560.503–1(*l*) similarly supports this conclusion. That regulation provides that the claimant shall be deemed to have exhausted administrative remedies "on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." Where, as here, a claimant has received a

decision on the merits of the claim excusing the exhaustion of administrative remedies based upon technical procedural irregularities would be entirely inconsistent with the recognized purposes of the exhaustion requirement.

Tindell waited for Aetna to issue its determination, received the determination, and then waited nine months to file a lawsuit challenging the decision, on these facts the Court sees no reason why Tindell should not have pursued an administrative appeal before proceeding to court. Further, the Court does not find, nor does Tindell argue, that an administrative appeal would have been futile or would have failed to provide an adequate remedy. Indeed, Tindell's prior success on administrative appeal demonstrates that the Plan's review process was not inadequate. As such, the Court finds that Tindell has failed to exhaust her administrative remedies as to the claims before the Court. Accordingly, Aetna's Motion for Summary Judgment is due to be granted.

## IV. Tree of Life's Motion

The Court now takes up Tree of Life's Motion for Summary Judgment. Tindell's success in her claim against Tree of Life is dependent upon the Court first determining that she is entitled to continue receiving LTD benefits under the Policy. *See* Amended Complaint ¶ 22 ("[W]hile an employee is receiving Long Term Disability benefits through the Tree of Life LTD Plan, the employee is entitled to continuation of coverage for certain other benefits under the Tree of Life Benefit Plan."); *see also* Tree of Life's Motion at 3 ("Continuing coverage for Other Benefits is contingent upon Tindell's continued receipt of LTD benefits."). Because the Court will grant Aetna's Motion for Summary Judgment, Tindell is not entitled to receive any additional LTD benefits at this time.

Thus, Tindell has not satisfied the threshold requirement for obtaining the "other benefits" from Tree of Life. Accordingly, Tree of Life's Motion for Summary Judgment is due to be granted.

After due consideration, it is

**ORDERED:**

1. Defendant, Aetna Life Insurance Company's, Dispositive Motion for Summary Judgment with Statement of Undisputed Material Facts and Memorandum of Law in Support Thereof (Doc. No. 34) is **GRANTED.**

2. Defendant Tree of Life's Renewed Dispositive Motion for Summary Judgment with Accompanying Statement of Undisputed Material Facts and Memorandum of Law (Doc. No. 35) is **GRANTED.**

3. The Clerk of the Court is directed to enter **JUDGMENT** in favor of Defendants, Aetna Life Insurance Company and Tree of Life, Inc., and against Plaintiff, Kathleen Tindell.

4. The Clerk of Court is further directed to close the file and terminate any remaining deadlines as moot.