[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 05-10973

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
June 27, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 02-02197-CV-HS-S

ROLAND H. BICKLEY,
on behalf of Georgia Pacific Corporation
Life Health and Accident Plan and
all other similarly situated Plans,

Plaintiff-Appellant,

versus

CAREMARK RX, INC.,
CAREMARK, INC.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Alabama

**(June 27, 2006)**

Before ANDERSON, DUBINA and HILL, Circuit Judges.

DUBINA, Circuit Judge:

Appellant Roland H. Bickley ("Bickley") brought a class action suit, on behalf of the Georgia Pacific Corporation Life Health and Accident Plan ("the Plan") and all other similarly situated plans, pursuant to section 502(a)(2) and (a)(3) of the Employment Retirement Income Security Act of 1974 ("ERISA") (codified at 29 U.S.C. § 1132(a)(2) and (a)(3)), against Caremark, Rx, Inc.[1] and, its subsidiary, Caremark, Inc. ("Caremark"). Bickley alleged that Caremark, as Pharmacy Benefits Manager ("PBM") of the Plan, is a fiduciary within the meaning of ERISA and breached various fiduciary duties owed to the Plan in violation of section 409 of ERISA (codified at 29 U.S.C. § 1109(a)).[2] The district court dismissed the action without prejudice, reasoning that Bickley failed to exhaust his administrative remedies. *Bickley Caremark Rx, Inc.*, 361 F. Supp. 2d 1317 (N.D. Ala. 2004). After careful review of the record, reading the parties' briefs, and hearing oral argument, we affirm.

## I. BACKGROUND

This case is one of many class actions that have been filed across the country against Caremark for alleged breaches of its fiduciary duties to self-

---

[1]Bickley's claims against Caremark Rx, Inc. were dismissed by the district court and he does not challenge the dismissal on appeal.

[2]To prevent confusion between ERISA citations and the statutory numbers, reference will be made to the ERISA citations.

funded employee benefit plans under ERISA. Bickley's complaint[3] alleges that he is a participant in and beneficiary of the Plan, which is offered by his employer Georgia-Pacific. The Plan is an employee benefit plan governed by ERISA and is self-funded by Georgia-Pacific. Georgia-Pacific funds the Plan by placing its money in a trust or similar account for its employees' prescription drug benefits.

According to the complaint, employers which adopt self-funded plans typically hire a third-party administrator to administer the plan and to pay prescription drug claims for the employers using the plan's money. In this case, Bickley alleges that Georgia-Pacific's prescription drug benefits are administered by Caremark as a PBM. Georgia-Pacific's relationship with Caremark is governed by a contract ("PBM agreement"). In its capacity as PBM, Bickley alleges that Caremark manages both the purchase and flow of prescription drugs on behalf of the Plan. Specifically, Bickley alleges that Caremark buys drugs from manufacturers, sells drugs to retail pharmacies, operates a service where Plan members can fill their prescriptions by mail, and negotiates prescription drug prices with manufacturers and retail pharmacies.

---

[3]We refer to the complaint at issue, namely, the Second Amended Complaint (R. Vol. 6, Tab 87), as the "complaint."

Bickley filed this class action suit against Caremark on behalf of the Plan pursuant to section 502(a)(2) and (a)(3) of ERISA.[4] Because of its management of the prescription drug benefits, Bickley alleges that Caremark is a fiduciary to the Plan. Bickley also alleges that Caremark breached its fiduciary duties, in violation of ERISA section 409,[5] by enriching itself "through undisclosed discounts, rebates, coupons and other forms of compensation from drug companies and pharmacies." Bickley further alleges that Caremark creates undisclosed pricing "spreads" between the discounted price it pays to retail pharmacies and drug manufacturers

---

[4]Section 502(a)(2) and (a)(3) are two of ERISA's civil enforcement provisions which state, in relevant part:

> (a) . . . A civil action may be brought . . .
> (2) by the Secretary, or by a [plan] participant, beneficiary or fiduciary for appropriate relief under Section 409 [29 U.S.C. § 1109];
> (3) by a [plan] participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan;

29 U.S.C. § 1132(a)(2)-(3) (emphasis added).

[5]Section 409, which is referenced in section 502(a)(2), is captioned "Liability for breach of fiduciary duty" and provides:

> (a) Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).

4

and the discounted price it contracts to be reimbursed by the Plan. Bickley alleges that Caremark receives undisclosed discounts, rebates, and soft dollars from drug manufacturers in exchange for favoring that drug manufacturer's drug over another in its standardized formulary and drug switching programs. Bickley asserts that Caremark failed to disclose these practices and retention of these profits, and that Caremark evades the government's best pricing statute, the Omnibus Budget and Reconciliation Act, by conspiring with drug manufacturers. Bickley sought declaratory and injunctive relief, attorneys' fees and costs, and an accounting for all Plan assets and profits Caremark retained for its own benefits.

Caremark filed a motion to dismiss based on lack of standing, failure to state a claim, and failure to exhaust administrative remedies. The district court alternatively held that if exhaustion was not required, Bickley's complaint was due to be dismissed with prejudice because he lacked statutory standing to sue on behalf of the Plan under ERISA section 502(a)(2) or (a)(3) and because Caremark did not constitute an ERISA fiduciary. The district court then issued an order dismissing Bickley's motion for class certification as moot. Bickley then perfected this appeal.

## II.  STANDARD OF REVIEW

We review a motion to dismiss under the same standards as the trial court. *Stephens v. Dep't of Health and Human Servs.*, 901 F.2d 1571, 1573 (11th Cir. 1990).  "On a motion to dismiss, the facts stated in the appellant's complaint and all reasonable inferences therefrom are taken as true."  *Id*.

We review the district court's decision to excuse a plaintiff's failure to exhaust administrative remedies for clear abuse of discretion.  *See Curry v. Contract Fabricators, Inc.*, 891 F.2d 842, 846 (11th Cir. 1990), *abrogated on other grounds by Murphy v. Reliance Standard Life Ins. Co.*, 247 F.3d 1313, 1314 (11th Cir. 2001).

## III.  DISCUSSION

"The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court."  *Counts v. Amer. Gen'l Life & Acc. Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997).  This exhaustion requirement applies equally to claims for benefits and claims for violation of ERISA itself.  *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1316 n.6 (11th Cir. 2000).[6]  "However, a district court has the sound discretion 'to

---

[6]Bickley urges this court to reconsider its precedent requiring exhaustion of administrative remedies for claims alleging violation of statutory rights.  However, unless otherwise directed by the United States Supreme Court or this court en banc, we are bound by precedent to apply the exhaustion requirement.  *See United States v. Thomas*, 916 F.2d 647, 652 n.6 (11th Cir. 1990).

6

excuse the exhaustion requirement when resort to administrative remedies would be futile or the remedy inadequate,' . . . or where a claimant is denied 'meaningful access' to the administrative review scheme in place." *Id*. at 1315 (internal citations omitted). "The decision of a district court to apply or not apply the exhaustion of administrative remedies requirement for ERISA claims is a highly discretionary decision which we review only for a *clear* abuse of discretion." *Id*.

In this case, Bickley did not exhaust the administrative remedy outlined in the Plan and the district court did not excuse the exhaustion requirement. On appeal, Bickley argues that the district court should have excused his failure to exhaust the administrative remedies because an administrative remedy was not available for his claims of breach of fiduciary duty. He argues that the administrative scheme set out in the Plan was limited solely to a claim for benefits, and that the Plan explicitly provided that a participant who alleges violations of fiduciary duty may file suit in federal court.[7] Alternatively, Bickley argues that if

---

[7]Neither party contends that it was improper for the district court to consider the Plan and the PBM agreement in reaching its decision. A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss. However, this court has held "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleading for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Both the Plan and the PBM agreement are central to Bickley's claim, thus the district court, along with this court, can consider the documents in reaching its decision.

administrative procedures were available for his claims, such procedures were futile and could not provide adequate relief. We disagree.

First, the language in the Plan upon which Bickley relies does not excuse him from exhausting his administrative remedies before filing suit. In the Plan Details, under the heading of "Statement of ERISA Rights," it states that if "plan fiduciaries misuse the plan's money . . . [a plan participant] may seek assistance from the U.S. Department of Labor, or . . . may file suit in federal court." (R. Vol. 4, Tab 62, Ex. A at 83.) This Plan language, however, merely recites plan participants' general rights under ERISA and does not excuse a participant from satisfying the exhaustion requirement. *See Springer v. Wal-Mart Assocs. Group Health Plan*, 908 F.2d 897, 900 (11th Cir. 1990) (finding that despite plan's general language giving a participant the right to sue in federal court, the exhaustion requirement must be satisfied first because "the right to seek federal review matures only after that requirement has been appropriately satisfied or otherwise excused").

Second, we are not persuaded by Bickley's argument that no administrative procedure for his statutory claims was available because the administrative scheme in the Plan only related to denial of benefit claims. Although the Plan's

8

administrative scheme related to "claims,"[8] the Plan also provided that "[i]f you have questions about your plan, you should contact the Plan Administrator [Georgia-Pacific]" and Georgia-Pacific "has the exclusive responsibility and complete discretionary authority to control the operation and administration of the Plan, with all power necessary to . . . resolve all interpretive, equitable and other questions that shall arise in the operation and administration of this Plan."  (R. Vol. 4, Tab 62, Ex. A at 81 & 83.)  Thus, as the district court properly held, "[t]aking all the provisions as a part of an integrated Agreement and viewing the same provisions in the light of ERISA's integrated statutory scheme, . . . Bickley and other Plan members do have an administrative remedy."  *Bickley*, 361 F. Supp. 2d at 1336.  According to the Plan, the Plan Administrator, Georgia-Pacific, or the Plan Benefits Claim Processor, can receive and review claims such as Bickley's and respond.  In fact, not only can Georgia-Pacific respond to such claims, it has the duty to consider the pursuit of breach of fiduciary duty claims on behalf of the Plan.  *See* ERISA § 409.

We have repeatedly emphasized that the exhaustion requirement "reduce[s] the number of frivolous lawsuits under ERISA, minimize[s] the cost of dispute

---

[8]Under the Plan, "claims" are defined as "[a] demand to the Benefits Claim Processor for the payment of benefits for reimbursable expenses under a medical, dental, disability, or other insurance plan."  (R. Vol. 4, Tab 62, Ex. A at 55.)

resolution, enhance[s] the plan's trustees' ability to carry out their fiduciary duties expertly and efficiently by preventing premature judicial intervention in the decisionmaking process, and allow[s] prior fully considered actions by pension plan trustees to assist courts if the dispute is eventually litigated." *Mason v. Cont'l Group, Inc.*, 763 F.2d 1219, 1227 (11th Cir. 1985). This precept is most apt in this case because the alleged injury to the Plan arises from a contractual relationship between Georgia-Pacific and Caremark, and Georgia-Pacific has not had an opportunity to fully consider Bickley's allegations nor determine, as trustee of the Plan, whether it is in the best interest of the Plan to pursue such allegations. Allowing this case to go forward would result in "premature judicial intervention in the decisionmaking process." *Id*.

Finally, we conclude that the district court did not abuse its discretion in failing to apply the futility exception. "[B]are allegations of futility are no substitute for the 'clear and positive' showing of futility required before suspending the exhaustion requirement." *Springer*, 908 F.2d at 901 (citation omitted). Here, Bickley's claim of futility is merely speculative because he did not even attempt to pursue the administrative procedure available so there is no indication as to whether Georgia-Pacific was aware of Caremark's alleged conduct

10

and, if aware, would have pursued the claims.[9] Additionally, Bickley's argument that administrative review would be futile because resolution of his claims requires ERISA interpretation, which Georgia-Pacific does not have the authority to make, does not justify an exemption from the exhaustion requirement. Our prior precedent makes clear that the administrative exhaustion requirement for ERISA claims should not be excused merely because a claim is brought pursuant to the statute. *See Perrino*, 209 F.3d at 1315 n.6. As such, Bickley was compelled to first exhaust the available administrative remedies contained in the Plan prior to filing suit in federal court. Accordingly, we hold that the district court did not abuse its discretion in applying the exhaustion requirement to Bickley's claims.

## IV. CONCLUSION

For the foregoing reasons, we affirm the district court's dismissal of Bickley's complaint without prejudice for failure to exhaust his administrative remedies.[10]

We further affirm the district court's order denying the motion for class certification as moot.

**AFFIRMED.**

---

[9]We are not persuaded by Bickley's argument that exhaustion of administrative remedies was futile because the remedy would be inadequate. The potential for an adequate legal remedy exists in this case because, given an opportunity to address Bickley's claim on behalf of the Plan, Georgia-Pacific could provide the remedy Bickley seeks by pursuing a claim against Caremark.

[10]Because we affirm the district court's judgment of dismissal on the basis of exhaustion, we need not address the alternative grounds for dismissal.