**Richard K. HALL, Plaintiff,**

v.

**UNITED OF OMAHA LIFE INSURANCE COMPANY, Defendant.**

**No. 1:10–CV–417–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 30, 2010.

---

Jeffrey S. Warncke, Dietrick Evans Scholz & Williams, Atlanta, GA, for Plaintiff.

Michael Joseph Hannan, III, Thompson, Slagle & Hannan, LLC, Duluth, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, Sr., District Judge.

Before the Court is Defendant United of Omaha Life Insurance Company's motion to dismiss [14] and for eave to file additional supporting authority [32], and Plaintiff Richard K. Hall's motion for summary judgment [22].

## I. Background

In this action, Plaintiff Richard K. Hall is claiming long-term disability ("LTD") benefits under a group disability policy governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq. The relevant LTD policy was issued and is administered by Defendant United of Omaha Life Insurance Company. Hall is a beneficiary of the policy as a result of his employment with Caraustar Industries, Inc., for whom he worked as an industrial plant engineer.

To understand the current dispute, it is necessary to start with the accident that seems to be the predicate for Hall's current LTD claim. On June 1, 2002, Hall was roofing his wife's grandfather's garage when he fell approximately fourteen feet off the roof. Hall fractured his lower back, left leg, left foot, and left heel bone. He contends that despite his doctor's recommendation to wait and his continued pain from his injuries, he returned to work. Hall did not file a LTD claim immediately after the accident.

Several years later, on February 4, 2006, Hall filed a LTD claim with United. In his claim, Hall averred that he was unable to work due to clinical depression and anger issues caused from being in constant physical pain and from his physically and mentally demanding job. He attached to his claim an evaluation by his doctor that focused on his mental disability but briefly mentioned that a secondary source of his mental condition was chronic pain from old injuries. On August 4, 2006, United approved Hall's LTD claim based on his mental/psychiatric disability.[1]

On July 2, 2008, United advised Hall that his benefits would be terminated effective August 11, 2008 because he would have then received the maximum twenty-four months of benefits for his mental disorder.[2] Hall was informed that he had 180 days to appeal this decision.

On December 18, 2008, Hall appealed United's termination decision. In his appeal letter, he mentioned his physical disability and stated that he was unable to hold a job.[3] On December 30, 2008, Unit-

---

**1.** The policy grants United the discretion and final authority to construe and interpret the policy, i.e., it has the authority to decide all question of eligibility and all questions regarding the amount and payment of any benefits within the terms of the policy as interpreted by United.

**2.** The plan specifically states:

If You are Disabled because of a Mental Disorder Your benefits will be limited to a total of 24 months while insured under the policy, unless You are confined as a resident inpatient in a Hospital at the end of that 24-month period.... In no event will benefits payable due to Mental Disorders be payable beyond the Maximum Benefit Period ....

It is undisputed that Hall was not a resident inpatient at the end of the period. Consequently, he had reached the maximum benefits payable under the mental disorder provision at the end of the twenty-four-month period.

**3.** In support of this contention, Hall attached job rejection letters from several businesses, but as United points out, all of the rejection

ed denied Hall's appeal, explaining that he had received the maximum amount of benefits available for his mental disorder LTD claim. United, however, stated that it appeared that his physical condition may entitle him to additional LTD coverage.[4] Consequently, United told Hall that it was forwarding his claim to a claim analyst, as it had never before reviewed his claim for a physical condition or impairment.

On December 31, 2008, United requested that Hall provide the contact information for all of his treating physicians. On January 20, 2009, Hall sent United the requested information. On January 27, United sent Hall a letter notifying him that it had to request additional information from his doctors and that it would get back to him once it had received and reviewed the requested information. United contends that this letter operated as a trigger for a thirty-day extension of the time within which it had to issue a decision on his new LTD claim.

On March 24, 2009, United mailed Hall a letter denying his application for LTD benefits based on his physical impairment and detailing the appeals process. Sometime after this, Hall retained his current counsel.

On July 20–21, 2009, Highland Park Physical Therapy performed a functional capacity evaluation ("FCE") on Hall. The examiner concluded that Hall did not meet the physical activity level of "Sedentary Work" as defined by the U.S. Department of Labor's ("DOL") Dictionary of Occupational Titles and placed the following restrictions on his activities: (1) floor-to-waist lifting (with a minimum lift height of eighteen inches above the floor): fifteen pounds rarely, five pounds occasionally; (2) right-handed carrying: ten pounds rarely, five pounds occasionally; (3) left-handed carrying: ten pounds rarely, five pounds occasionally; and (4) sitting static: occasionally with inability to sit for more than fifty percent of the workday or "most of the time."

On September 1, 2009, Lee Brinkley Bryan, Inc. performed a vocational analysis on Hall. The examiners concluded that (1) Hall no longer meets the physical demands of his past occupation;[5] (2) he functions below the sedentary level of physical demand; (3) there are no reasonable accommodations that would allow him to compensate for the vocational impairments associated with his physical limitations; and (4) his restriction of no more than 2.5 hours of sustained activity each day prohibits him from realistic employment on a part-time or full-time basis in any alternative occupation in the national economy.

On September 17, 2009, Hall (through his attorney) sent an eleven-page, single-spaced letter to United, appealing its March 2009 decision denying Hall LTD benefits. Included with the letter were approximately four hundred pages of Hall's medical records and evaluations. United received the letter and accompany-

---

letters indicated that the businesses were not currently hiring. None of the letters states that Hall's disability prevented him from performing the applied-for job.

**4.** The LTD plan stated that "[a]fter a Monthly Benefit has been paid for 2 years, Disability and Disabled mean You are unable to perform all of the Material Duties of Any Gainful Occupation." The plan further defined "Gainful Occupation" as "an occupation, for which You are reasonably fitted by training, edu-

cation or experience, [that] is or can be expected to provide You with Current Earnings at least equal to 85% of Basic Monthly Earnings within 12 months of Your return to work."

**5.** The examiners stated that this conclusion was based on his employer's job analysis information, the results of the recent FCE, the medical opinions of Hall's treating physicians, and Hall's subjective report.

ing documents on September 18 and stamped it as received by United's benefits department on September 30.[6]

On October 28, 2009, United referred Hall's file for medical review. On November 2, United requested a forty-five day extension in order to complete the pending medical review. United contends that it was entitled to this extension because the appeal could not be determined in the first forty-five days.

On November 4, 2009, United received the medical review file from the reviewing physician, who recommended that Hall see an orthopedic surgeon if United determined that it was going to based its appeal decision on Hall's current physical condition (as opposed to his condition in August 2008 when his initial benefits ended).

On November 5, 2009, United sent Hall's counsel a letter notifying him that it was requiring Hall to obtain an independent medical exam ("IME") with an orthopedic surgeon. In the letter, United explained that it was exercising this right pursuant to the language in the Payment of Claims section of the plan, which states, "We [United] sometimes require that a claimant be examined by a Physician or vocational rehabilitation expert of our choice. We will pay for these examinations. We will not require more than a reasonable number of examinations." United subsequently scheduled the IME for December 9, 2009.

By way of letters dated November 9 and 10, 2009, respectively, Hall's counsel challenged United's extension request and refused to have Hall submit to an IME. In his letter challenging the extension, Hall's counsel contended that United's extension request failed to comply with any of the ERISA regulatory requirements and was

thus an invalid request. He demanded that United either provide a prompt written decision or provide Hall with the information required for a proper ERISA extension request. In his letter challenging the IME request, Hall's counsel averred that the language upon which United relied in its IME request was not in the applicable policy and thus Hall declined to see United's physician. Hall's counsel further argued that United's request for an IME at this late stage of the process made him suspicious of its motive in making the request.

On November 18, 2009, United explained to Hall why the extension was necessary, why the IME was necessary (which included the reviewing physician's conclusions), and informed Hall that he had until December 3 to agree to an IME. United also stated that if he failed to attend an IME, it would be forced to affirm its denial of his LTD claim based on physical incapacity. Hall did not agree to attend an IME by December 3. Consequently, on December 17, United upheld its denial of Hall's physical disability claim.

On February 12, 2010, Hall filed this lawsuit, seeking benefits pursuant to 29 U.S.C. § 1132(a)(1)(B) and an order finding that United's denial of his claim was an abuse of discretion and awarding Hall litigation expenses, including attorney's fees.

On May 26, 2010, United filed a motion to dismiss Hall's claims without prejudice for failing to exhaust his administrative remedies [14]. United contends that Hall's refusal to submit to the requested IME constitutes a failure to exhaust his administrative remedies, and consequently his suit must be dismissed.

---

**6.** Part of the current dispute arises from the date to start the clock running on the ERISA deadlines. Hall started the clock on September 18, but United started it on September 30, the day the benefits department received the letter.

On June 22, 2010, Hall filed a motion for summary judgment [22], in which he argues that United abused its discretion in denying his claim and that as a result he is entitled to benefits from August 11, 2008 to the present.

The Court first reviews United's motion to dismiss, as the Court's analysis of it could make it unnecessary to analyze Hall's motion for summary judgment.

## II. United's Motion to Dismiss

■ United asserts that Hall's claim must be dismissed without prejudice because Hall failed to exhaust his administrative remedies when he refused to submit to an IME, which its plan requires Hall to attend when requested. United avers that Hall's refusal to attend the IME resulted in its having to make its decision based on an incomplete record and that it should have the opportunity to complete the record.

Hall responds that (1) neither the plan nor ERISA regulations authorize United's demand that he submit to an IME during an administrative appeal and after it terminated his benefits; (2) the request for an IME was made in "absolute bad faith"; (3) he exhausted his administrative remedies by following the plan procedures; and (4) even if he has not exhausted his remedies, he is deemed to have done so because United did not provide him with a full and fair review.

### A. Failure to Exhaust Administrative Remedies

■ In the Eleventh Circuit, a plaintiff in an ERISA action must exhaust the available administrative remedies before filing suit. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir.2006); *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir.2000); *McDowell v. Standard Ins. Co.*, 555 F.Supp.2d 1361, 1365 (N.D.Ga.2008). The exhaustion require-ment is strictly enforced. *Perrino*, 209 F.3d at 1318. Indeed, the requirement is not excused even for "technical violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy." *Id.* at 1317.

■ A district court, however, may excuse the exhaustion requirement in exceptional circumstances. *Bickley*, 461 F.3d at 1325. A plaintiff need not exhaust the administrative remedies if resorting to such remedies would be futile or the remedy inadequate or if he would be denied meaningful access to the review scheme in place. *Id.* The exceptions are usually applied in circumstances where requiring exhaustion "would be an empty exercise in legal formalism." *Perrino*, 209 F.3d at 1318. This does not include situations, though, where an insurer is technically noncompliant but the claimant still had a reasonable and fair opportunity to pursue a claim through the administrative process. *Id.* Consequently, "if a reasonable administrative scheme is available to a plaintiff and offers the potential for an adequate legal remedy, then a plaintiff must first exhaust the administrative scheme before filing a federal suit." *Id.*

The Court first determines whether the plan at issue allowed United to require an IME when making an appeal determination and whether Hall's refusal to submit to an IME constitutes a failure to exhaust. United relies on several provisions of the plan to support its argument, the most persuasive being the provision in "Payment of Claims" stating that it can require an IME and the language granting it the "final authority to construe and interpret the Policy," which includes deciding "all questions of eligibility." Applying these provisions, United concludes that it had the discretion and authority to require an

IME before issuing its appeal decision. It further contends that Hall's refusal was a manipulative and strategic maneuver intended to extort the tight ERISA deadlines and force it to make a decision relying only on his doctors' conclusions.

Hall contends that interpretation of the plan requires the Court to look to the section entitled "Disability Claim Review Procedures," not the "Payment of Claims" section because the request for the IME arose during an appeal determination, not in the payment of a claim. Hall avers that the review procedures only allow United to consult with a health care professional. Thus, he concludes that the structure and organization of the plan prove that United did not have the right to demand an IME when reviewing an appeal after termination of benefits.

The Court rejects Hall's suggested interpretation of the plan. When interpreting the plan at issue, the Court is to "tak[e] all the provisions as a part of an integrated Agreement and view[ ] the provisions in the light of ERISA's integrated statutory scheme." *Bickley*, 461 F.3d at 1329. Thus, Hall's suggestion that the Court should only look to one part of the plan is unreasonable, as the Court must look at the entire plan.[7] *See also Babikian v. Paul Revere Life Ins. Co.*, 63 F.3d 837, 840 (9th Cir.1995) (holding that an ERISA insurance policy is governed by a uniform body of federal common law, which requires policy language to be interpreted "in an ordinary and popular sense as would a person of average intelligence and experience").

Looking at the language addressing examinations, United's plan does not limit when in the claim determination process United can require a claimant to attend an IME. This makes sense, as it could be presented with a considerable amount of new medical information on appeal, as was the case here. Moreover, the plan states that the appeal review decision will not give deference to the initial adverse decision and will be conducted by a new claim analyst. Thus, it is reasonable that the new reviewers could find an IME necessary based on the additional information provided by Hall for the first time on appeal. Consequently, the Court finds that the plan does not limit when an IME can be requested.

In addition, in the context of this case, United's request for an IME was not an attempt to stall its decision of Hall's claim. Once it received the reviewing physician's recommendation that Hall submit to an IME, United immediately notified Hall. It also scheduled the IME approximately ten days prior to expiration of the extended deadline. These actions suggest that the IME was a legitimate part of United's investigation of Hall's claim and not an attempt by United to abuse the ERISA deadlines. *Cf. Sidou v. Unumprovident Corp.*, 245 F.Supp.2d 207, 215 (D.Me.2003) (finding the insurer's request for an IME almost a year after the plaintiff submitted her appeal to be unreasonable).

The Court also finds United's request reasonable in light of the applicable ERISA regulations. In the regulation addressing appeal of an adverse determination, United must when "deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment ... consult with a health care professional who has appropriate training and experience." 29 C.F.R. § 2560.503–1(h)(3)(iii). As required, United consulted a health care professional because Hall's claim required medical

---

**7.** Moreover, Hall's argument that the "Payment of Claims" section does not apply is disingenuous, as payment of a claim was at issue since a reversal of the initial adverse decision would have resulted in payment of Hall's claim.

judgment. A reasonable outcome of the professional's review is the recommendation that United gather additional evidence through an IME.

Nothing in the regulations explicitly forbids United from acting on the health care professional's opinion that an IME is necessary. *See* 29 C.F.R. § 2560.503–1(h)(3)(iii), (v) (stating requirement for health care professional consultation when medical judgment required and that a new health care professional must be consulted for the appeal decision); *see generally* 29 C.F.R. § 2560.503–1 (noting that the regulation is silent as to an insurer's ability to request an IME during the claim decision process). Indeed, it makes little sense to require an insurer to consult a medical professional, but then limit the insurer's ability to act on the professional's recommendation that the claimant undergo an IME. Imposing the limitation suggested by Hall would force United to make a decision on an incomplete record, thereby undermining United's obligation to provide a full and fair review. *See Commc'ns Workers of Am. v. Am. Tel. & Tel. Co.,* 40 F.3d 426, 433 (D.C.Cir.1994) (finding that where a plan administrator has discretionary authority to determine benefits eligibility or to construe the terms, it is important for the plan to provide a "final, fully considered, and reasoned explanation for the court to evaluate").

Interpreting United's plan to allow for an IME during the appeal process is also consistent with the purpose of the exhaustion requirement. The Eleventh Circuit enforces the exhaustion requirement so strictly because it "reduces the number of frivolous lawsuits under ERISA [and] minimizes the cost of dispute resolution .... " *Bickley,* 461 F.3d at 1330. If an IME is necessary (i.e. not a dilatory tactic), then United should be able to require a claimant to attend one at any point in the claim decision process, as it could result in a decision in favor of the claimant and eliminate the need for a federal lawsuit. *See Hunter v. Metro. Life Ins. Co.,* 251 F.Supp.2d 107, 112 (D.D.C.2003) (finding the plaintiff's lawsuit, filed after she refused to attend an IME, "the very type of premature judicial interference that the ERISA exhaustion requirement aims to prevent"). In this case, Hall's attendance at the IME could have eliminated the need for this lawsuit and reduced the cost of the decision process for both sides.[8]

The Court also finds Hall's contention that United's request was made in "absolute bad faith" to be without merit. Hall avers that the reviewing physician's opinion that Hall's 2009 FCE was not relevant to his physical condition in August 2008 makes an IME at this point in time also irrelevant. Thus, he concludes that United's request was nothing more than an attempt to buttress its adverse decision.

United responds that the physician's opinion was that Hall's FCE and other evidence shed no light on his condition in August 2008. However, the physician did think that a claim could exist based on Hall's current condition, which the evidence primarily addressed and which United received for the first time on appeal. Thus, the physician suggested that United have Hall attend an IME if it intended to allow benefits based on Hall's current condition. United immediately contacted Hall and set the IME within the extension deadline. A few days later, United sent another letter to Hall explaining this exact argument. Thus, United concludes that its request for an IME was made in good faith. The Court agrees.

Accordingly, the Court finds that United's plan allows it to require Hall to attend an IME during the appeal process and

8. Indeed, United explained this to Hall in its November 18, 2009 letter.

that Hall's refusal to attend the IME resulted in him not exhausting his administrative remedies. *See Zalka v. Unum Life Ins. Co.*, 65 F.Supp.2d 1369, 1371 (S.D.Fla. 1998) (holding that the plaintiff's refusal to submit to an IME and immediately filing suit precluded the defendant from completing its administrative reviewing of her claim); *accord Hunter*, 251 F.Supp.2d at 111–12 (holding that the insurer's denial of the plaintiff's appeal did not amount to exhaustion because it was based on the plaintiff's refusal to undergo an IME and not on a complete review of her claim). Also, Hall does not argue that any of the recognized exceptions apply in this case. Thus, United's motion should be granted unless the Court determines that Hall should be deemed to have exhausted his administrative remedies.

## B. Deemed Exhaustion

■ Hall contends that even if he has not exhausted his administrative remedies, he should be deemed to have exhausted them because United failed to afford him a full and fair review of his appeal. He avers that United failed to follow the procedures detailing its deadlines for notifying him of its decisions, and accordingly the Court should deem him to have exhausted his administrative remedies pursuant to 29 C.F.R. § 2560.503–1(*l*). United responds that the Eleventh Circuit only requires it to substantially comply with ERISA's claim regulations, which it did.

ERISA requires in 29 C.F.R. § 2560.503–1(h)(1) that United establish and maintain a plan that affords Hall (1) a reasonable opportunity to appeal an adverse benefit determination, and (2) a full and fair review of his claim and United's adverse benefit determination. The consequence of United failing to establish or follow such a plan is detailed in 29 C.F.R. § 2560.503–1(*l*). which states in pertinent part that

[i]n the case of the failure of a plan to . . . follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of the Act on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

The purpose of this provision is to "protect[ ] a claimant by insuring that the administrative appeals process does not go on indefinitely." *LaAsmar v. Phelps Dodge Corp. Life, Accidental Death & Dismemberment & Dependent Life Ins. Plan*, 605 F.3d 789, 798 (10th Cir.2010).

The parties dispute whether United complied with the portions of the plan detailing the notification deadlines, and if determined that it did not, whether its failure to do so results in Hall being deemed to have exhausted his administrative remedies.

With respect to an initial claim decision, United has forty-five days from its receipt of the claim within which to make an initial claim decision. This initial period can be extended for up to thirty days, however, if United notifies the claimant prior to expiration of the initial period and if matters beyond United's control prevent a decision within forty-five days. This second period can be extended another thirty days if the same conditions are met. This policy language is consistent with the applicable ERISA regulation, 29 C.F.R. § 2560.503–1(f)(3).

If United issues an adverse benefit determination, a claimant has 180 days to file an appeal, which is consistent with ERISA regulation, 29 C.F.R. § 2560.503–1(h)(3)(i). After receipt of an appeal, United again has forty-five days to issue its decision. It

may extend this initial period by forty-five days if it notifies the claimant before the initial period expires and if special circumstances exist that require the extension. Again, this language is consistent with the applicable ERISA regulation, 29 C.F.R. § 2560.503–1(i)(1)(i), (3)(i).

It is undisputed that United timely decided Hall's appeal[9] of its decision to terminate his benefits based on his mental health disability, which ended in August 2008. On its own accord, United then forwarded Hall's appeal information to a claim analyst to determine if he had a new claim based on his alleged physical disabilities.[10] Hall's file was sent to a claim analyst on December 30, 2008.[11] United notified Hall on March 24, 2009 that it was denying his disability claim based on his physical condition.

Hall contends that this decision occurred well after the deadlines provided for in the plan, which is a clear violation of the "full and fair review" requirement that United follow the plan requirements. Even if Hall is correct, this alleged failure does not matter because Hall waited for United to issue its decision. The Court finds *Tindell v. Tree of Life, Inc.*, 672 F.Supp.2d 1300 (M.D.Fla.2009), instructive. Faced with similar facts, the *Tindell* court held that "[i]f the claimant waits for the plan administrator to issue a determination, then the claimant should pursue the administrative route to its end." *Id.* at 1311. The court found such a requirement was (1) consistent with the purpose of the exhaustion requirement, (2) did not impose an indefinite delay or permit an administrator to delay accrual of the right to sue, and (3) was consistent with ERISA's deemed exhaustion provision. The Court agrees. Hall could have filed suit once the original deadline had passed, but he chose to wait. Thus, United's alleged delay[12] in providing an initial claim decision does not trigger the deemed exhaustion provision.

After receiving the March 2009 decision, Hall waited to file his appeal until September 2009.[13] United received the appeal on September 18, 2009. On October 28, it forwarded the claim for medical review. On November 2, United requested an extension because it had not yet received the reviewing physician's report. On November 4, United received the doctor's recommendation that Hall undergo an IME. The next day, United notified Hall.

By letter dated November 9, 2009, Hall objected to the extension on the grounds that United's request did not comply with the ERISA regulations. He demanded

---

**9.** Hall's counsel repeatedly refers to the length of time that has passed since August 2008 and lays blame for the alleged delay solely on United. However, the "delay" is also the result of Hall's actions. United notified Hall in July 2008 that his benefits would terminate the following month. Hall did not file his appeal until December 2008, almost four months after his benefits ended. While he was well within his rights to wait this long, he cannot now seek to blame United for this delay.

**10.** The Court notes that United could have, but did not, ask Hall to complete the plan requirements for filing a new claim, which would have prolonged the claim decision process.

**11.** Hall seeks to start the ERISA clock from December 10, 2008, the date on his appeal letter. The Court, however, finds the more appropriate date is December 30, 2008, the day Hall's appeal was transformed to a new disability claim, as evidenced by United's letter to Hall.

**12.** The Court does not address United's argument that application of ERISA's tolling and thirty-day extension provisions result in its decision being issued in a timely manner.

**13.** Again, Hall was within his rights to wait this long, but he cannot now use his delay as support for his contention that United intentionally delayed rendering its decisions.

that United either forward him an appropriate extension request or render a decision immediately. By letter dated November 10, Hall objected to the extension and the IME. On November 18, United responded to Hall's letters, explaining why an IME was necessary and giving Hall until December 3 to let it know if he would undergo the IME. There is no response to this last letter from Hall in the record. However, he admits that he waited for United to issue its decision, despite his objection to the extension. He also admits that this decision was timely.

These admissions, coupled with his own invitation that United rewrite the extension request, negate Hall's contention that United's plan has "failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim." 29 C.F.R. § 2560.503–1(*l* ). United's November 18 letter tried to accommodate Hall's objections by detailing how it was within the ERISA deadlines, why an IME was necessary, and how the plan did allow it to require that he undergo an IME. *Cf. Torres v. Pittston Co.,* 346 F.3d 1324 (11th Cir.2003) (finding the insurer failed to provide a full and fair review where it told the plaintiff almost eight months after receiving the claim that the claim was still under review and filing suit would be premature). The letter did not suggest that the IME was requested merely to buttress its adverse determination. Indeed, "[s]eeking independent expert advice is evidence of a thorough investigation ... [and allows an insurer to] resolve[ ] any doubts it may have had by requiring [the claimant] to be examined by an independent medical expert ...." *Crespo v. Unum Life Ins. Co. of Am.,* 294 F.Supp.2d 980, 995–96 (N.D.Ill. 2003).

As further proof of its good faith request, United did not attempt to toll the extension deadline while it waited for Hall's decision. *Cf. McDowell,* 555 F.Supp.2d at 1372 (finding the insurer's gross misapplication of ERISA's tolling provision, which delayed its decision for months, resulted in unacceptable delays, amounting to a failure to follow its plan). Moreover, allowing United time to conduct an IME is consistent with the DOL's comment to the regulation that the purpose of the appeal decision extension is "to provide plans with the flexibility necessary to handle all claims appropriately, whether such claims are easy or difficult." 65 Fed.Reg. 70246, 70250 (Nov. 21, 2000).

In fact, any inadequacy in the process was the result of Hall's own behavior. Hall objected to the extension, yet admittedly said United could rewrite the request (which it did). Hall then waited the full period of the extension for a decision, which reasonably indicated to United that its November 18 letter was an adequate extension request. Hall cannot now claim that the additional delay hurt him and seek to penalize United by "avoid[ing] the exhaustion requirement by citing technical deficiencies in the ERISA claims procedure that did not hinder [his] pursuit of an effective administrative review of [his] claims." *Tindell,* 672 F.Supp.2d at 1312; *accord Perrino,* 209 F.3d at 1317–18.

Furthermore, despite his supposed immediate need for aid, Hall waited almost two months to file suit after receiving United's decision and refused to submit to an IME that United indicated in its last letter to him could result in disability benefits as a result of his current condition. It is possible that but for his own actions, Hall could be receiving benefits and the dispute could potentially be limited to benefits from August 2008 to the summer of 2009 when Hall had his FCE.

Accordingly, the Court rejects Hall's argument that he should be deemed to have exhausted his administrative remedies. This conclusion is wholly consistent with 29 C.F.R. § 2560.503–1(*l* ). "Where, as

here, [Hall] has received a decision on the merits[,] excusing exhaustion based upon technical procedural irregularities would be entirely inconsistent with the recognized purposes of the exhaustion requirement." *Id.* Consequently, the Court will grant United's motion, as "[a]llowing this case to go forward would result in premature judicial intervention in the decision-making process." *Bickley,* 461 F.3d at 1330.

### III. Conclusion

United's motion to dismiss without prejudice [14] is GRANTED. Hall's motion for summary judgment [22] and United's motion to file supplemental authority [32] are DENIED AS MOOT. Hall's complaint is DISMISSED WITHOUT PREJUDICE. Within thirty days of the date of this Order, Hall shall undergo an independent medical examination with a physician of United's choosing. Within thirty days of the examination, United shall issue its appeal decision.