[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11537
Non-Argument Calendar
_____

D.C. Docket No. 8:10-cv-02436-SDM-MAP

FLORIDA HEALTH SCIENCES CENTER, INC., etc.,

Plaintiff,

KRISTY SCHWADE,

Plaintiff-Appellant,

versus

TOTAL PLASTICS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 6, 2012)

Before HULL, MARTIN and COX, Circuit Judges.

PER CURIAM:

Kristy Schwade sued Total Plastics, Inc., the Plan Administrator of a self-funded Employee Retirement Income Security Act healthcare plan, seeking benefits under the Plan.  The Plan Administrator had withheld payments to Schwade because she failed to execute a subrogation agreement and provide additional information despite the Plan's requirement that she do so.  The district court granted summary judgment to Total Plastics because the court found that the Plan Administrator had correctly denied Schwade benefits and that Schwade had failed to exhaust her administrative remedies.  Schwade now appeals.  Because we conclude that Schwade did not exhaust her administrative remedies, we affirm.

## I.

Kristy Schwade's son, K.S., began exhibiting symptoms of a condition known as "shaken baby syndrome" in May of 2007, when he was five months old.  An investigation traced his condition to the actions of a daycare provider, who later pled guilty to aggravated child abuse.  In the hands of the daycare provider, K.S. had incurred catastrophic and permanent brain damage.  He spent two months in Tampa General Hospital and thereafter required continuous medical treatment.  K.S. died in January of 2011 at the age of four.

When K.S. was injured, Schwade was a participant in an Employee Retirement Insurance Security Act (ERISA) medical-benefits plan made available and funded by

2

her then-employer, Total Plastics, Inc.  K.S. was a beneficiary of the Plan.  This litigation arose out of the denial of medical benefits to which Schwade claims herself entitled under the terms of the Plan.

This appeal concerns two provisions of the Plan, as provided in the Plan Summary: the subrogation right and the administrative appeal procedure.

First, the Summary establishes a subrogation right: the Plan's right to recover from a participant who received benefits "[a]ny amount" that the participant "is entitled to receive" from other sources due to an injury or other medical condition. (R. 1-20, Ex. 5 at 60.)  The Summary also stipulates that, "if requested," a participant must "execute documents . . . and deliver instruments and papers and do whatever else is necessary to protect the Plan's rights."  (*Id.*)  The Summary makes clear that the Plan Administrator "has no obligation" to pay medical benefits if the participant "does not sign or refuses to sign" these documents.  (*Id.*)

Second, the Summary establishes an administrative appeal procedure that a participant must follow before he or she may take outside legal action against the Plan. The Summary first states that the Plan Administrator will notify a claimant of any "adverse benefit determination"—which the Summary defines as any "denial, reduction or termination of a benefit, or a failure to provide or make payment, in whole or in part, for a benefit"—by a "claim denial notice, usually referred to as an

3

Explanation of Benefits (EOB) form." (*Id.* at 70.) This Explanation of Benefits form will include specific reasons for the denial and cite the corresponding plan provisions, tell the claimant how to correct the error (by, for example, providing more information), and tell the claimant how to challenge the determination. (*Id.*) The Summary then outlines a mandatory appeal procedure for an adverse benefit determination.[1] In pertinent part, this procedure requires the claimant to file an appeal within 180 days of the date he or she receives an Explanation of Benefits form. (*Id.*)

For around two months following K.S.'s injury, the Plan paid his medical expenses. On June 28, 2007, however, the Plan Administrator sent Schwade a letter telling her that it could not process her claim for benefits unless she filled out and signed a questionnaire about K.S.'s injury and signed a subrogation agreement. (R. 1-20, Ex. 6.) The questionnaire directed her to "return it immediately." (*Id.*) The subrogation agreement warned her, in all capital letters, that her "failure or refusal" to execute the agreement would "relieve[] the plan of any and all . . . obligation" to pay her benefits. (*Id.*) Schwade did not respond to this letter.

---

[1] The appeal procedure has two levels, the first mandatory and the second voluntary. (R. 1-20, Ex. 5, at 70–71.) The Covered Person "must exhaust" the mandatory first level "before any outside action is taken." (*Id.* at 70.) The summary stipulates, however, that the plan will "not assert a failure to exhaust administrative remedies if a Covered Person elects to pursue a claim in court before following this voluntary appeal process." (*Id.* at 72.)

Between August 7 and November 30, 2007, the Plan Administrator sent Schwade fifty-four Explanation of Benefits forms, according to the summary judgment record.[2] Each form listed an "Amount Billed," an "Amount Not Payable," a reason for the nonpayment, and an amount "Provider May Bill You." (*See, e.g.*, R. 1-20, Ex. 9.) Every form also came attached to a form letter providing a phone number and a website for questions about the Explanation of Benefits form and explaining how to file an appeal of the claim decision referenced in the form. (*See, e.g., id.*) In five of these forms, the listed amounts were not payable because "[c]harges incurred after the date coverage ends are not covered." (R. 1-20, Exs. 7, 12.) In one form, no amounts were payable due to a "[p]rovider negotiated reduction" and because charges were "applied toward the hospital deductible/copayment." (R. 1-20, Ex. 11.) In the other forty-eight forms, the listed amounts at issue in this appeal were not payable for the following reason: "We need updated accident information to process your claim." (R. 1-20, Exs. 9, 12.) The forms then provided a phone

---

[2] The Plan Administrator had previously sent Explanation of Benefits forms to Schwade on June 19 and June 26, 2007. The June 19 form told Schwade that the Plan had paid ninety percent of K.S.'s medical expenses. (R. 1-20, Ex. 11.) The June 26 form told her that the accrued expenses during that period had either been reduced as a "[p]rovider negotiated reduction" or were copayments that Schwade had made. (*Id.*)

5

number and website Schwade could use to contact the Plan Administrator.[3] Schwade did not respond to any of these letters or forms.

On June 5, 2008, Schwade's attorney sent the Plan Administrator a letter seeking information about Schwade's benefits claim. (R. 1-3, Ex. 3.) The Administrator responded on June 18 that Schwade needed to sign the subrogation agreement before a determination could issue and again warned that Schwade's failure to sign the agreement voided any obligations the Plan may have had. (*Id.* Ex. 4.) On July 1, 2008, the Administrator sent another letter to Schwade's attorney stating that, "[a]t this time[,] no additional charges will be considered until the Subrogation Agreement is received." (*Id.* Ex. 5.) Schwade's attorney protested this statement in a July 28 letter, complaining that the Administrator ignored Schwade's claim for the "sole reason" that she did not "sign[] a boiler plate subrogation agreement," the language of which was "totally unacceptable." (*Id.* Ex. 6.) He refused, on Schwade's behalf, to sign the agreement.

Schwade's attorney then tried to cut a deal with the Plan Administrator. In a November 4, 2008 letter, he wrote that the subrogation right "prohibit[ed] any civil action on [K.S.'s] behalf" by requiring the plan's reimbursement for recovery from

---

[3] Many of the forms denying benefits due to the need for "updated accident information" also denied certain other amounts as "[p]rovider negotiated reduction[s]."

a third party "first and in full, regardless of the costs and attorney fees expended to make such a recovery possible." (*Id.* Ex. 7 at 1.)  On that reasoning, he proposed that K.S. and the Plan instead split any recovery from a civil action equally "after payment of the costs and attorney fees." (*Id.*)  The Plan Administrator apparently ignored this letter, because Schwade's attorney again proposed the deal on March 12, 2009. (*Id.* Ex. 8.)  The second proposal seems to have also been ignored.  On December 14, 2009, Schwade's attorney wrote that he "f[ou]nd it hard to believe" the subrogation agreement's language was "valid under ERISA" or that the Administrator could require Schwade's signature before the plan would issue benefits.  (*Id.* Ex. 9.)  The Plan Administrator issued no response.

Tampa General Hospital sued Schwade in March of 2010 for more than $600,000 in medical expenses.  Schwade removed the case and filed a third-party complaint against Total Plastics,[4] challenging the plan's denial of benefits under 29 U.S.C. § 1132(a)(1)(B)[5] and claiming nearly $1.5 million.

Total Plastics moved for summary judgment, arguing that Schwade's failure to provide the requested information entitled the plan to deny her benefits and that, at any rate, Schwade failed to exhaust administrative remedies the Plan required.  The

---

[4] The district court remanded Tampa General's action but retained the third-party action.

[5] Section 1132(a)(1)(B) allows an ERISA plan participant to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

district court agreed with Total Plastics on both grounds and granted summary judgment. Schwade moved the court to reconsider under Fed. R. Civ. P. 59(e). The court denied her motion. Schwade then timely appealed the district court's grant of summary judgment.

## II.

First, Schwade challenges the district court's determination that the Plan Administrator's denials of benefits were correct.[6] Second, she challenges the district court's findings that she failed to exhaust her administrative remedies and that the exhaustion requirement was not excused.

As we explain below, we conclude that Schwade failed to exhaust her administrative remedies and that the district court did not err in refusing to excuse her failure to exhaust. Accordingly, we do not address Schwade's other arguments.

## III.

We have long maintained that participants in an ERISA plan to whom benefits have been denied must exhaust their administrative remedies before challenging the denial in court. *See Variety Children's Hosp., Inc. v. Century Med. Health Plan, Inc.*, 57 F.3d 1040, 1042 (11th Cir. 1995). If a plan participant fails to exhaust these

---

[6] Schwade also argues that the district court erred by refusing to apply equitable principles to prospectively limit the Plan's anticipated reimbursement for any recovery Schwade might obtain from third parties.

administrative remedies, the district court may grant summary judgment in favor of the Plan. *See, e.g.*, *Merritt v. Confederation Life Ins. Co.*, 881 F.2d 1034, 1035 (11th Cir. 1989). The district court may, however, exercise its discretion not to require exhaustion when "resort to administrative remedies would be futile or the remedy inadequate," *Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) (quoting *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997)) (internal quotation mark omitted), or "where a claimant is denied 'meaningful access' to the administrative scheme in place," *id.* (quoting *Curry v. Contract Fabricators, Inc. Profit Sharing Plan*, 891 F.2d 842, 846–47 (11th Cir. 1990)).

Here, the district court determined that Schwade failed to exhaust her administrative remedies. It found that Schwade never appealed because the letters from Schwade's attorney did not constitute appeals and that Schwade did not appeal any Explanation of Benefits form within 180 days from its receipt, the window allowed for appeals of determinations. The court further determined that an appeal was not excused due to either the futility of appealing or the Plan's "technical defects" in noticing Schwade of the denial of benefits. (R. 2-31 at 21–22.)

There are thus two standards of review at play in this appeal. On one hand, we review de novo a district court's grant of summary judgment based on a determination that a plan participant failed to exhaust administrative remedies. *Counts*, 111 F.3d

9

at 108.  Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001).  On the other hand, we review the district court's decision to excuse or not to excuse the exhaustion requirement for a clear abuse of discretion.  *Perrino*, 209 F.3d at 1315; *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990).

## A.

Schwade contends that the district court erred in finding that she never appealed.  She claims that she in fact appealed through "her counsel's written expressions of disagreement with the denial of benefits," which "amounted to . . . administrative appeal[s] sufficient to satisfy the exhaustion requirement." (Appellant Br. at 23.)  At the very least, she submits, whether these letters amounted to appeals of an adverse benefits determination presents a material dispute of fact that should preclude summary judgment.  (*Id.*)

These arguments miss the point.  The Plan Administrator sent Schwade a letter on June 28, 2007, warning her that she needed to provide more information.  It then sent Schwade fifty-four Explanation of Benefits forms and form letters between August and November of 2007 refusing benefits payments and explaining the appeals

10

process. The Plan Administrator heard nothing from Schwade until her attorney sent the plan a letter on June 5, 2008, after the windows to appeal these letters closed.[7] Even if this letter could be construed as an appeal, Schwade's attorney submitted it too late.

Schwade, seemingly anticipating this response, argues that the 180-day window had not closed when her attorney submitted the June 5 letter or, at least, that a genuine issue of material fact exists regarding when the time to appeal began to run. She bases this assertion on her suggestion that "[t]he trier-of-fact could find that ambiguities in correspondence from the Plan—which seemed to hold out the possibility of payment of Mrs. Schwade's claim after providing additional 'accident information'—create a fact question as to when the 180 day period started to run." (*Id.* at 25.)

She fails, however, to indicate exactly what these ambiguities were. We agree with the district court's determination that the Plan Administrator provided her unambiguous notice, under the Plan's language, that it denied her claims:

> [E]ach explanation of benefits states "YOUR IMMEDIATE RESPONSE
> IS REQUIRED" (caps in original) and provides in several places

---

[7] We assume that the June 5, 2008 letter was sent more than 180 days after Schwade's receipt of the last of the Explanation of Benefits forms, which is dated November 30, 2007. Neither party states differently, and both appear to assume that, if the Explanation of Benefits forms and attached letters do start the 180-day window for appeals, Schwade's attorney did not send the letter on time.

11

information on contacting the Plan administrator.  Each explanation of benefits advises how to appeal a claim denial and warns that an appeal must occur within one hundred eighty days.  In sum, the explanations of benefits were ample notification that the Plan had denied claims and that an appeal was due within a stated time.

(R. 2-31 at 21.)  The plan summary provides that a claimant to whom the plan administrator denies benefits—in whole or in part—will receive a "claim denial notice, usually referred to as an Explanation of Benefits (EOB) form," and the form will include reasons for the denial, explain how the claimant can correct the error, and describe the appeal process. (R. 1-20, Ex. 5 at 70.)  Schwade received forty-eight Explanation of Benefits forms pertinent to this case.  The forms provided reasons for the denial (the need for further information), explained how Schwade could correct the error (by providing that information), and described to her the process for appealing the denial.  We find no ambiguity in the forms Schwade received.  Thus, we reject Schwade's argument that her attorney's letter on June 5, 2008 was timely.

B.

Next, Schwade contends that the district court erred in determining that she did not have an excuse allowing her to bring legal action without exhausting her administrative remedies.  She does so on two bases: first, that the Plan Administrator failed to follow the Plan's own claims procedures, and second, that an appeal would

have been futile. As stated above, we review the district court's refusal to excuse the exhaustion requirement for an abuse of discretion.

Schwade's first basis for excuse is misdirected.[8] A Plan Administrator's failure to follow designated procedures in providing a claimant notice of a benefits denial does not excuse exhaustion of administrative remedies but rather requires the district court to remand to the plan administrator "for an out-of-time administrative appeal." *Counts*, 111 F.3d at 108. Accordingly, Schwade cannot argue excusal from exhausting administrative remedies on the basis that the Plan Administrator failed to fulfill the terms of the plan summary. She has never sought a remand to the Plan Administrator for an appeal. We therefore consider this argument waived. *See id.* (considering a similar argument waived when the appellant never argued for a remand to the plan administrator but instead consistently argued that an administrative appeal was excused due to the plan's alleged deficient notices of a benefits denial).

---

[8] Specifically, she alleges that the Plan Administrator did not provide a "specific reason" for denying her claim, as required in the Plan Summary. (Appellant Br. at 26.) She notes that while the Explanation of Benefits forms told her the Plan Administrator needed "updated accident information," the Administrator actually denied her claim because she did not submit a subrogation agreement. (*Id.* at 27.) In any case, she argues that she did not know why the claim was denied and believes that her confusion "was a result of the violation of the Plan's substantive requirement to specify the reason for the denial." (*Id.* at 28.) Schwade fails, however, to either support her accusation that the reason given by the Plan Administrator (the need for more information) was pretextual or explain why giving a pretextual reason violates the language of the Plan Summary in a way that would excuse her from submitting an appeal within the required window. Regardless, she does not seek the remedy this argument would allow her, requiring us to consider her argument waived.

13

As her second ground for excusal, Schwade argues that the district court erred by finding that she could not claim that an administrative appeal would have been futile.

As a general rule, a district court can, in its discretion, enforce the exhaustion requirement despite a claimant's futility argument if the claimant was "not denied access to an administrative scheme from which [she] could have received an adequate legal remedy for [her] ERISA claims." *Perrino*, 209 F.3d at 1319. Accordingly, we have found that, if nothing indicates that a plan administrator would have afforded a claimant less than an adequate legal remedy, a claimant who does not first attempt to use administrative remedies waives the futility argument. *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1330 (11th Cir. 2006); *see also Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1225 (11th Cir. 2008) ("In *Bickley*, we rejected an argument of futility as speculative because the participant had not attempted to pursue administrative remedies.").

Here, the district court determined that "a futility argument is closed to Schwade because Schwade needed to at least attempt to pursue an administrative remedy" (R. 2-31 at 21 (citing *Lanfear*, 536 F.3d at 1225)), and that Schwade foreclosed the argument anyway by pleading only "bare allegations of futility" rather than the "'clear and positive' showing of futility" our cases have required, (*id.* at

14

21–22 (quoting *Bickley*, 461 F.3d at 1330)).  Thus, the district court exercised its discretion not to excuse the exhaustion requirement.

## IV.

We conclude that the district court properly found that Schwade failed to exhaust her administrative remedies and that the district court did not abuse its discretion in deciding not to excuse her failure to exhaust.  We therefore affirm.

AFFIRMED.